Raymond L. Wilkes, J.
It is often not easy to reconcile the truth the spirit knows with the truth the mind knows in a world beset with realities. Hence, we find ourselves posed with the query: Is it better to have 1 ‘ advised ’ ’ and wonder, than never to have “ advised ” at all!
*677 In this prosecution pursuant to subdivision 2 of section 1192 of the Vehicle and Traffic Law for driving while intoxicated, the People concede that the 11 Miranda advices ” were not given to this defendant prior to the taking of the evidence which the defendant now seeks to suppress. Somewhat succinctly put then, the two questions of law posed during this consolidated pretrial Huntley and suppression hearing relating to an arrested defendant charged with driving while intoxicated are:
Absent Miranda:
1. May there be admitted into evidence the fruits of a Police Department oral 1 ‘ interview ’ ’ consisting of 44 questions and answers propounded pursuant to a form questionnaire (People’s Exhibit No. 1, Nassau County Police Department Form No. 38) 1
2. May the results of a series of “ performance tests ” at the precinct, such as balance, walking, turning, retrieving coins and placing finger to nose, all of which were also a part of People’s Exhibit No. 1, likewise be admitted into evidence!
The answer to question No. 1 poses, to say the least, no undue problem. It is now well settled to the point of being the prevailing pantheon that a person in custody must, prior to interrogation, be clearly informed (a) that he has the right to remain silent, (b) that anything he says will be used against him in court, (c) that he has the right to consult with a lawyer, and to have the lawyer with him during interrogation, and (d) that if he is indigent, a lawyer will be appointed to represent him. (Miranda v. Arizona, 384 U. S. 436, 467-473.)
Since the People conceded during this hearing that the defendant was not informed of the foregoing rights prior to his interrogation, and there is no evidence that he intelligently waived his privilege against self incrimination and his right to retained or appointed counsel, the defendant’s “ communicative ” responses to the queries derived from the “ interview ” portion of People’s Exhibit No. 1, must be, and accordingly hereby are suppressed out of hand.
For an evocative discussion of the “ Application of Miranda, etc. in traffic cases ” see N. Y. L. J., August 21, 1967, page 1, column 4, by Bichard E. Erwin, Public Defender of Ventura County, California.
The point of our petard must now however, be addressed to a far more sensitive^refinement, namely, the “ performance tests A brief philosophic premise or two prior to that encounter, while Ave pause for reflection, finds its most compelling expression for me in the words of Circuit Judge Invino B. Kaufmau, Avriting for the United States Court of Appeals, Second Circuit in United *678 States v. Freeman (357 F. 2d 606, 607-608 [Feb. 28,1966]) where he said: “ As legislation proliferates and judicial decisions multiply, our criminal law daily takes on increased complexity and sophistication. Subtle distinctions are constantly drawn; more perfect refinements continue to evolve. At the same time, however, there are a small number of more basic questions which cut across the whole of this evolutionary process, questions so fundamental to the very notion of criminal justice that they must continue to be asked — and, insofar as possible answered — if the criminal law is truly to reflect the moral .sense of the community. ’ ’
One of my more beloved brethren of the bench has been given to say of recent times, “ the threading of the needle of the law becomes ever more difficult as the size of the eye diminishes,” and as Judge Kaufmau so cogently commented in United States v. Freeman (supra, pp. 618-619): “ As the commentary to the American Law Institute’s Model Penal Law observes, ‘ The law must recognize that when there is no black and white it must content itself with different shades of gray. ’ ”
Now, at long last, anent the facts:
It appears that on February 11, 1967, at approximately 7:50 p.m., the defendant was operating an automobile which became involved in an accident with another motor vehicle at the intersection of Herzog Place and Jerusalem Avenue, Nassau County, New York. Patrolman Dominick Di Costanzo arrived at the scene and after a series of inquiries, punctuated by some words and actions upon the part of the defendant which the officer understandably found somewhat less than seemly, the defendant was arrested upon a charge of driving while intoxicated and taken to the 2nd Precinct, Hicksville. While there he was subjected to an “interview” (People’s Exhibit No. 1, Nassau County Police Department Form No. 38) and, in addition, was required to perform certain physical tests. It is evidence relative to these “performance tests” which the defendant now seeks to suppress.
Any reasonably thorough endeavor to discuss the questions of law addressed to the admissibility in evidence of the ‘ ‘ performance tests ’ ’ must, perforce, begin and to some extent, conclude with a reference to Schmerber v. California (384 U. S. 757 [June 20,1966]) since the position of the People herein, must, in my view, stand or fall upon whether or not the holding enunciated in that case is to govern. The facts in Schmerber, therefore, warrant recital.
It seems that the petitioner was hospitalized following an accident involving an automobile which he had apparently been driving. A police officer smelled liquor on the petitioner’s breath *679 and noticing oilier symptoms of drunkenness at the accident scene and at the hospital, placed him under arrest, and informed him that lie was entitled to counsel, that he could remain silent, and that anything he said would be used against him. At the officer’s direction a physician took a blood sample from petitioner despite his refusal on advice of counsel to consent thereto. A report of the chemical analysis of the blood, which indicated intoxication, was admitted in evidence over objection at petitioner’s trial for driving while intoxicated. Petitioner was convicted and the conviction was affirmed by the Appellate Department of the California Superior Court, which rejected his claims of denial of due process (14th Arndt.); of his privilege against self incrimination (5th Arndt.); of his right to counsel (6th Arndt.); and of his right not to be subjected to unreasonable searches and seizures (4th Arndt.). The Supreme Court of the United States affirmed, the conviction, and speaking through Mr. Justice Brennan, who delivered the opinion of the court, said (p. 761): “We hold that the privilege [the Fifth Amendment privilege of any person not to 1 be compelled in any criminal case to be a witness against himself ’] protects an accused only from being compelled to testify against himself, or otherwise provide the State with evidence of a testimonial or communicative nature,5 and that the withdrawal of blood and use of the analysis in question in this case did not involve compulsion to these ends.”
At this point, because of its almost oppressive bearing upon the issue at bar, I must allude for a moment to footnote 5 to the foregoing quotation, which appears at the bottom of page 761 of Mr. Justice Brennan’s opinion, where he says in part, in a seemingly patent endeavor to circumscribe the full portent of his majority opinion: “A nod or head-shake is as much a ‘ testimonial ’ or ‘ communicative ’ act in this sense as are spoken words.” (Italics supplied.)
Mr. Justice Brennan continues (p. 764): “The distinction which has emerged, often expressed in different ways, is that the privilege is a bar against compelling ‘ communications ’ or ‘ testimony ’, but that compulsion which makes a suspect or accused the source of ‘ real or physical evidence ’ does not violate it * * * there will be many cases in which such a distinction is not readily drawn. Some tests seemingly directed to obtain £ physical evidence,’ for example, lie detector tests measuring changes in body function during interrogation, may actually be directed to eliciting responses which are essentially testimonial. To compel a person to submit to testing in which an effort will be made to determine his guilt or innocence on the basis of *680 physiological responses, ivh ether willed or not, is to evoke the spirit and, history of the Fifth Amendment. Such situations call to mind the principle that the protection of the privilege ‘ is as broad as the mischief against which it seeks to guard.’ Counselman v. Hitchcock, 142 U. S. 547, 562.” (Italics supplied.)
In my considered view, the balance, walking, turning, retrieving coins and finger-to-nose tests all fatally fall within the proscription of the foregoing language.
In addition in United States v. Wade (388 U. S. 218, decided June 12, 1967, one year after Schmerber), one of the Justices in a separate opinion which concurred in part with Mr. Justice Bbmnnan’s majority opinion and dissented in part said (p. 261): “ To permit Schmerber to apply in any respect beyond its holding is, in my opinion indefensible.” This is, to say the least, rather pungently pertinent prose.
When all is said and done, whether or not Schmerber can be rationalized upon the ground that the physical act of taking the defendant’s blood was an involuntary act, i.e., an action not within the control of the defendant, or that it was not communicative testimonial compulsion, really has no finite bearing here.
The performance tests to which this defendant was subjected without having been advised of his right to counsel etc. (and of not having counsel present, as in United States v. Wade, 388 U. S. 218, supra and Gilbert v. California, 388 U. S. 263) were remorselessly related to the condition of his sobriety, and hence, to the questions of his guilt or innocence. These tests went to the very marrow of the then burgeoning prosecution against him. We are as much judged by what we do, as we are by what we say. Either can be exculpatory as well as incriminatory.
This holding is readily distinguishable from a defendant being-compelled to submit to fingerprinting, photography, or measurements, to write or speak for identification, to appear in court, to stand, to assume a stance, to walk or to make particular gestures, or the taking of exemplars of a defendant’s handwriting containing no testimonial or communicative matter, all of which were held not to be violative of a defendant’s Fifth Amendment privilege against self incrimination in United States v. Wade (supra) and Gilbert v. California (supra).
As Mr. Justice Breiwan said in Wade, as he referred to his decision in Schmerber (p. 223): “the distinction to be drawn under the Fifth Amendment * * * is one between an accused’s ‘ communication ’ in whatever form, vocal or physical, and 1 compulsion which makes a suspect or accused the source of “real or physical evidence.” ’ ” The defendant herein, to put *681 it somewhat euphemistically, was not acting out the performance tests for identification or in the abstract. In each instance he was being required to give evidence bearing directly upon the questions of his guilt or innocence — he was in a word, “ communicating ’ ’, most literally.
It is too well established to require comment, that the Fourteenth Amendment makes both the self incrimination clause of the Fifth Amendment and the right to counsel clause of the Sixth Amendment obligatory upon the States. (Malloy v. Hogan, 378 U. S. 1; Gideon v. Wainwright, 372 U. S. 335.)
In view of the foregoing, all evidence relating to the “ interview ’ ’ and the ‘ ‘ performance tests ’ ’ is hereby suppressed. The Miranda requirements are apposite.