Harold Fertig, J.
The court, after a hearing, granted two parts of the defendant’s motion to suppress evidence to be presented by the People in the above-entitled action. Both involved statements made by the defendant while in custody without having been given the Miranda warnings. One issue remains to be decided by this court and that is the subject of this decision.
The defendant was stopped by a police officer after he noticed her driving in what appeared to be an erratic manner weaving from side to side. After she came to a stop, the officer testified she had slurred speech and had difficulty getting out of her motor vehicle. When she finally came out of the automobile with the assistance of the officer, she leaned against the car to keep from falling. Certain statements made by the defendant both at the scene and later at the police *187 station were suppressed as being involuntarily made. After her arrest for driving while impaired by the consumption of drugs pursuant to subdivision 4 of section 1192 of the Vehicle and Traffic Law, the defendant was taken to the police precinct and after answering questions pertaining to identification, the defendant, without being first warned that she had a right to remain silent, that anything she said might be used against her, that she had a right to a lawyer, and that if she could not afford a lawyer, one would be appointed for her, she was given certain "sobriety tests.” She was not told that she need not take the tests and was told specifically what acts she was to perform. The police officer administering the tests instructed her specifically what she was to do and checked certain boxes on police Form No. 38 describing the manner in which she performed.
Shortly after the decisions of Miranda v Arizona (384 US 436) and Schmerber v California (384 US 757) by the United States Supreme Court, there were two opposing decisions relating to "Performance Tests” in the District Court, Nassau County. The first, People v McLaren (55 Misc 2d 676) decided in 1967 held that the failure to give a defendant the Miranda warnings prior to his taking the performance tests was fatal. The second, People v Suchocki (57 Misc 2d 26) decided in 1968 determined that the Miranda warnings were not applicable to sobriety tests.
Since the two afore-mentioned decisions, there have been many decisions concerning sobriety tests in the appellate courts of jurisdictions outside the State of New York, but this court could find no appellate determination of this question in the State of New York. In Schmerber v California (supra) the court made a distinction between "communications” or "testimony” and "real or physical” evidence. As a result of that decision, many subsequent cases determined that evidence obtained as a result of physical compulsion would not be barred because of the failure to give Miranda warnings. Included, were such items as physical compulsion to stand in a line-up (People v Falco, 67 Misc 2d 520); blood tests (People v Robinson, 27 NY2d 864); the examination of a defendant’s rectum for narcotics (Blackford v United States, 247 F2d 745) and the taking of dental impressions (People v Allah, 84 Misc 2d 500).
In People v McLaren (supra) the court went to some lengths, in citing Schmerber, to distinguish between physical *188 communication and real or physical evidence. This court can see a distinction between real evidence obtained from a defendant such as blood, dental impressions or narcotics recovered from a defendant’s body and the observations of a police officer of the actions of a defendant responding to his instructions. The physical evidence of blood, handwriting samples and dental impressions can be brought into the courf physically and presented to a jury for their inspection or at least to a witness who could testify as to their authenticity and make comparisons. Even an individual whose identity has been determined at a police line-up or after a requirement be made that that defendant wear certain objects of clothing to make such an identification or that a voice identification be made can all be brought to the trial and the identification can be repeated at the time of trial with an opportunity for the defendant to cross-examine the witnesses making such identification.
In the North Carolina Law Review (vol 45, pp 34, 117), the writer reasons that "The old distinction between communicative and noncommunicative incriminations has been preserved for the time being, but it will not stand indefinitely unless supported by basic principle as well as history. * * * The new principles should represent somewhat less amorphous concepts than those now current and they should much more clearly define the limits of an individual’s privacy. When that day comes, necessary chemical testing of hazard-producing drivers will undoubtedly be assured — and on a more satisfactory conceptual base than exists at present. Waiting until that day comes, Schmerber now stands temporary duty at the constitutional dike.”
In Erwin’s "Defense of Drunk Driving Cases” (vol 2, p 32-15, § 32.02) he states, "A physical performance test, however, is clearly distinguishable from a blood test, as described by the court, in that much greater participation by the motorist is required; there is not the same inevitability of results despite the will or effort of the defendant because he is not then in the passive role of one to whom something is done, but rather is actively trying to correctly perform physical tests to prove his innocence or disprove to police their opinion of his guilt.”
In the Hofstra Law Review (vol 3, p 586) the writer, referring to the cases of People v McLaren (55 Misc 2d 676, supra) and People v Suchocki (57 Misc 2d 26, supra) noted that the Suchocki decision equated co-ordination tests with the hand *189 writing and voice samples that were excluded from the privilege against self incrimination in Gilbert v California (388 US 263, 266-267) and concludes that co-ordination tests "are indeed communications of physiological response which may be inculpatory. The apprehended driver should be given Miranda warnings before responding to the questionnaire and performing the coordination tests. If warnings are required and a defendant is not apprised of his rights before the oral and physical responses are elicited, the results of the test might still be used to impeach the credibility of the defendant should he take the stand.”
This court sees merit to the argument that such sobriety tests when performed pursuant to requests made by police officers while the defendant is in custody are in the nature of communications and should have the benefit of Miranda warnings.
In the Cleveland Marshall Law Review (vol 18, pp 575, 585) also referring to sobriety tests, it was stated, "Miranda should not be employed to thwart law enforcement, but it should extend to those who need its protection” and in discussing the possibility of an instance where one might suffer death at the hands of a drunken driver stated, "Death is final, whether premeditated or caused by a drunken driver. Why should the former class be accorded superior rights over the latter?” Such was an argument attacking the need for law enforcement officials to be able to prosecute drunken drivers without being hampered by Miranda warnings.
Although recognizing a distinction between tests performed by a defendant at the request of a police officer where defendant intends to prove his innocence by his controlled actions and those real or physical things taken from a passive defendant, the contents of which are out of his control, this court is constrained to find otherwise in view of the many decisions both in this jurisdiction and in various appellate courts throughout many jurisdictions outside of New York State. In People v Mulack (40 Ill 2d 429) the court found that, the time of visual testing of persons arrested for drunken driving and of breath analysis was not a critical stage of the proceedings and a person arrested was not entitled to the Miranda warnings.
In United States v Wade (388 US 218, 222) the Supreme Court held that, "It is compulsion of the accused to exhibit his physical characteristics, not compulsion to disclose any knowl *190 edge he might have,” and in Holt v United States (218 US 245, 252-253) it was determined that "The prohibition of compelling a man in a criminal court to be witness against himself is a prohibition of the use of physical or moral compulsion to extort communications from him, not an exclusion of his body as evidence when it may be material.”
In numerous cases in other jurisdictions which deal directly with sobriety or performance tests, the vast majority of the appellate courts have determined that those tests are outside the protection of Miranda. In Flynt v State (507 P2d 586 [Okla]) the court held that since fingerprints and handwriting examples have been found to be outside the protection of Miranda, having the defendant attempt to walk a straight line is no different. Subsequent to the Schmerber decision, physical sobriety tests have been upheld without Miranda warnings in State v Liefert (247 So2d 18 [Fla]); Whalen v Municipal Ct. (274 Cal App 2d 809); State v Strickland (276 NC 253); People v Kruger (99 Ill App 2d 431); City of Mercer Island v Walker (76 Wn 2d 607); State v Bhattacharya (525 P2d 203 [Ore]); State ex rel. Murphy v City Court of City of Tucson (12 Ariz App 529); Borman v Tschida (171 NW2d 757 [ND]); Heichelbech v State (258 Ind 334); and City of Piqua v Hinger (15 Ohio St 2d 110). If the law of the State of New York is to be different from that of other jurisdictions, it should not be determined in this court.
In the light of the abundance of authority finding the performance or sobriety tests to be without the protection of the Miranda warnings, this court finds that the defendant’s motion with regard to the suppression of the performance test given by defendant is denied and shall not be suppressed.