STATE of South Dakota, Plaintiff
and Appellant,

v.

William R. ROADIFER, Defendant
and Appellee.

No. 14074.

Supreme Court of South Dakota.

Considered on Briefs Oct. 25, 1983.

Decided April 4, 1984.

Mark Smith, Asst. Atty. Gen., Pierre, for plaintiff and appellant; Mark V. Meierhenry, Atty. Gen., Pierre, on brief.

Neil P. Beets of Hill & Beets, Belle Fourche, for defendant and appellee.

MORGAN, Justice.

This intermediate appeal is from an order suppressing evidence in a prosecution for driving while under the influence (DWI) in violation of SDCL 32–23–1(2). Intermediate pretrial orders are appealable at this court's discretion. SDCL 23A–32–12. State filed a petition for allowance of appeal from the trial court's suppression order and this court granted the petition on February 22, 1983. We reverse and remand.

William R. Roadifer (Roadifer) was arrested for DWI and for driving under a revoked license in the early hours of September 8, 1982. Thereafter, the arresting officer, Police Chief Les Bradley (Bradley) took Roadifer to the Butte County Sheriff's Office in Belle Fourche, South Dakota, where sound and video recorders were used to document Roadifer's performance of two physical dexterity tests typical of what are commonly referred to as field sobriety tests. Roadifer was asked to balance on one foot and walk heel-to-toe on a straight line. Following the videotaping of these tests, Bradley read Roadifer the implied consent warnings, but Roadifer refused to submit to an intoxilizer test. Bradley then read Roadifer the *Miranda* warnings and Roadifer refused to answer subsequent questions. *Miranda v. Arizona,* 384 U.S. 436, 86 S.Ct. 1602, 16 L.Ed.2d 694 (1966). A preliminary hearing was held September 27, 1982, and Roadifer was bound over for trial on the DWI charge. On November 1, 1982, Roadifer moved to suppress the video and sound recordings of the field sobriety tests. The magistrate granted the motion, the circuit court affirmed the suppression order on January 28, 1983, and State appeals.

The question of whether the court below erred in suppressing the tapes is divided into three issues: (1) Whether direct testimony by any witnesses who observed the tests is admissible; (2) whether photographic evidence (video tapes) is admissible; and (3) whether vocal evidence (audio tapes) is admissible. The law-trained magistrate relied upon a New York case, *People v. McLaren,* 55 Misc.2d 676, 285 N.Y. S.2d 991 (1967),[*] and suppressed the evidence on the basis that the arrest evaporated the investigatory stage of the case. The trial court found as a fact that Roadifer was directed to perform field sobriety tests, while under arrest, in custody, and prior to having been advised of his *Miranda* rights. From this finding of fact it concluded that Roadifer's rights against self-incrimination under the Fifth Amendment to the United States Constitution and Article VI, § 9 of the South Dakota Constitution, had been violated. Thus, both the magistrate and the trial court pointed to the timing of the *Miranda* warnings as the basis for suppressing the evidence.

■ Granted, the timing of the *Miranda* warning is a crucial factor in the custodial interrogation of any suspect. *See Miranda, supra.* Such a warning, however, is not applicable here. Although he was in custody, Roadifer was not being interrogated. The Fifth Amendment privilege against self-incrimination, from which *Miranda* arises, "relates only to testimonial or communicative acts on the part of a

* Although Roadifer urges the court to follow the reasoning of *People v. McLaren,* 55 Misc.2d 676, 285 N.Y.S.2d 991 (1967), he admits that *McLaren* was overruled in *People v. Rosenthal,* 87 Misc.2d 186, 384 N.Y.S.2d 358 (1976), and that *Schmerber v. California,* 384 U.S. 757, 86 S.Ct. 1826, 16 L.Ed.2d 908 (1966), is the current rule.

person to whom the privilege applies." *State v. Provost*, 266 N.W.2d 96, 101 (S.D. 1978).

In *Schmerber v. California*, 384 U.S. 757, 86 S.Ct. 1826, 16 L.Ed.2d 908 (1966), the United States Supreme Court held that the privilege against self-incrimination and the protections of that privilege imposed by the Court in *Miranda* protect an accused "only from being compelled to testify against himself, or otherwise provide the State with evidence of a testimonial or communicative nature . . . ." 384 U.S. at 761, 86 S.Ct. at 1830, 16 L.Ed.2d at 914. Real or physical evidence was distinguished and is not covered by the privilege. *Id.* The United States Supreme Court further pointed out that precedent has limited protection of the privilege to situations in which the state seeks to obtain evidence against the accused by compelling it from his own mouth, *Schmerber, supra;* that the Fifth Amendment protection against self-incrimination that *Miranda* protects is the suspect's right to remain silent and to not be compelled to communicate or testify against himself; and that the Fifth Amendment protection and the *Miranda* warnings do not bar the compulsion of "real or physical evidence" from a suspect. *Schmerber, supra.*

The leading United States Supreme Court case, which sets out the crucial distinction, is *Holt v. United States*, 218 U.S. 245, 31 S.Ct. 2, 54 L.Ed. 1021 (1910). *Holt* involved, as an evidentiary question, the ownership of a shirt. The suspect was compelled to model the shirt to show that it fit him. He then sought to exclude testimony surrounding the shirt on the ground he had modeled it under duress and the evidence, he asserted, was therefore obtained by compelling him to be a witness against himself. The *Holt* opinion refers to this assertion as "an extravagant extension of the Fifth Amendment" and then goes on to explain the limits of the Fifth Amendment protection:

[T]he prohibition of compelling a man in a criminal court to be witness against himself is a prohibition of the use of physical or moral compulsion to extort communications from him, not an exclu-

sion of his body as evidence when it may be material. The objection in principle would forbid a jury to look at a prisoner and compare his features with a photograph in proof. Moreover, we need not consider how far a court would go in compelling a man to exhibit himself. For when he is exhibited, whether voluntarily or by order, and even if the order goes too far, the evidence, if material, is competent.

218 U.S. at 252–3, 31 S.Ct. at 6, 54 L.Ed. at 1030.

[C]ourts have usually held that [the privilege] offers no protection against compulsion to submit to fingerprinting, photographing, or measurements, to write or speak for identification, to appear in court, to stand, to assume a stance, to walk, or to make a particular gesture. The distinction which has emerged . . . is that the privilege is a bar against compelling "communications" or "testimony," but that compulsion which makes a suspect or accused the source of "real or physical evidence" does not violate it.

*Schmerber*, 384 U.S. at 764, 86 S.Ct. at 1832, 16 L.Ed.2d at 916. *See United States v. Dionisio*, 410 U.S. 1, 93 S.Ct. 764, 35 L.Ed.2d 67 (1973).

Dexterity tests are real physical evidence and are not protected by the constitutional privilege against self-incrimination. *City of Wahpeton v. Skoog*, 300 N.W.2d 243 (N.D.1980). These tests are based on the loss of coordination, balance and dexterity that results from intoxication, they do not force the subject to betray his subjective knowledge of the crime through communication or testimony. These tests merely compel the suspect to demonstrate his physical characteristics and condition at that time as a source of real or physical evidence to which observers may testify. *Wahpeton, supra.*

■ We hold, therefore, that testimony by observers of the tests regarding Roadifer's ability or inability to comply with the dexterity tests is admissible as physical evidence.

■ We next consider whether the video tape showing Roadifer's performance of

the exercise is admissible. We see no particular distinction between a long-standing rule regarding the admissibility of photographs and the admissibility of video tape evidence. We have long held that the admission of photographs lies in the sound discretion of the trial court. As was pointed out in *State v. Disbrow*, 266 N.W.2d 246, 253 (S.D.1978):

> [P]hotographs are admissible as competent evidence where they accurately portray anything which it is competent for a witness to describe in words, or where they are helpful as an aide to verbal description of objects and conditions, provided they are relevant to some material issue; and they are not rendered inadmissible merely because they vividly bring to jurors the details of a shocking crime or incidently tend to arouse passion or prejudice.

█ Finally, we view the issue of whether any audio recording is admissible. Testimony of arresting officers and the officer on duty at the police station regarding the *manner* in which a defendant charged with public intoxication spoke after his arrest was admissible even when *Miranda* warnings had not been given. *State v. Rauhauser*, 272 N.W.2d 432, 436 (Iowa 1978). The officers would not, however, be allowed to testify to the content of what was said. *Rauhauser, supra.* The *manner* of a person's speech is characterized as physical evidence and thus outside the scope of the Fifth Amendment protection against self-incrimination. *See Malloy v. Hogan*, 378 U.S. 1, 84 S.Ct. 1489, 12 L.Ed.2d 653 (1964). Were the audio tapes merely to show the manner of Roadifer's attempt to count backwards or recite the alphabet as requested, we would see no real distinction from the rule on admission of photographic evidence. We hold, however, that in any instance where the contents are admissions regarding his condition, they would be testimonial in nature and clearly fall within the protection of the Fifth Amendment.

We reverse the decision of the trial court affirming the law-trained magistrate's order of suppression and remand to the trial court with instructions to review the proffered evidence in accord with this opinion.

FOSHEIM, C.J., and WOLLMAN and DUNN, JJ., concur.

HENDERSON, J., concurs in result without writing.

