**STATE of South Dakota, Plaintiff and Appellee,**

v.

**Dale F. HOENSCHEID, Defendant and Appellant.**

**No. 14544.**

Supreme Court of South Dakota.

Argued Oct. 24, 1984.

Reassigned July 10, 1985.

Decided Sept. 6, 1985.

Grant E. Gormley, Chief Deputy Atty. Gen., Pierre, for plaintiff and appellee; Mark V. Meierhenry, Atty. Gen., Lee "Kit" McCahren, Legal Intern, Pierre, on brief.

Michael E. Unke, Salem, for defendant and appellant.

WOLLMAN, Justice (on reassignment).

Defendant appeals from his conviction of driving while under the influence of an alcoholic beverage. SDCL 32–23–1. We affirm.

Shortly before 8:00 p.m. on October 5, 1983, McCook County Deputy Sheriffs Mark Norris and Dave Gibbs were patrolling Highway 38 some three miles west of Montrose when they came upon defendant's vehicle traveling approximately 35 miles per hour. The officers decreased their speed and proceeded to follow defendant for about one mile. The officers observed defendant's vehicle weaving in its lane of travel, crossing the center line of the highway three times. The officers activated the red lights on their police vehicle in an attempt to stop defendant. After defendant failed to stop in response to the red lights, Deputy Gibbs flashed the headlights on his vehicle several times, whereupon defendant pulled to the side of the road.

Deputy Norris asked defendant for his driver's license. After going through his billfold two or three times, defendant produced the license. In response to Deputy Norris' question regarding his manner of driving, defendant replied that his front tires were bad. Deputy Norris observed that one of the front tires was bias ply and the other radial ply. Deputy Norris asked defendant whether he had been drinking, to which defendant replied in the affirmative. Deputy Norris noticed that defendant had a strong smell of alcohol on his breath and person, that he mumbled his words, that his tongue was heavy and slurred, and that his eyes were droopy and bloodshot. Deputy Norris then asked defendant to step from his vehicle and perform some field sobriety tests. Defendant refused, in an verbally abusive, obscene manner, to perform the several tests requested by Deputy Norris.

In the light of defendant's refusal to perform these field sobriety tests, Deputy Norris and Deputy Gibbs asked defendant to step between his vehicle and the patrol car to get out of the lane of traffic. De-fendant manifested rapid and extreme changes in his mood. He became verbally abusive, throwing his hat on the ground and yelling and screaming. He then spoke in sad and remorseful tones about his house payments. Deputy Norris again asked defendant if he had been drinking, to which defendant replied that he had had five or six drinks in Sioux Falls and some more in Montrose. Following his conversation with defendant between the two parked vehicles, during which he noticed that defendant was unsteady on his feet and had slow reflexes and reactions, Deputy Norris placed defendant under arrest for driving while intoxicated. Deputy Norris advised defendant that he was under arrest and started to read the implied consent and *Miranda* warnings, whereupon defendant responded by uttering some obscenities and slapping Deputy Norris' hand, causing his flashlight and the printed warning card to fall to the ground. The officers then handcuffed defendant and took him into custody.

## I.

*Trial Court's Refusal to Suppress Testimony Regarding Defendant's Refusal to Perform Field Sobriety Tests*

The trial court granted defendant's motion to suppress testimony regarding his refusal to submit to a blood-alcohol test but refused to suppress testimony regarding his refusal to submit to the field sobriety tests. We conclude that the court did not err in doing so.

This case presents an opportunity to correct the error we made in *State v. Neville*, 312 N.W.2d 723 (S.D.1981) (*Neville I*); and in *State v. Neville*, 346 N.W.2d 425 (S.D. 1984) (*Neville II*). That error was our holding that "Neville's refusal to submit to a blood test is evidence of a testimonial nature and thus within the protection of the privilege against self-incrimination." 346 N.W.2d at 429. We should have limited our holding to the ground relied upon by the United States Supreme Court, i.e., that the statute requiring a motorist to choose

between agreeing to submit to a chemical test of his blood and thereby giving evidence against himself or refusing to take the test and suffering the consequences of that refusal does not involve unconstitutional coercion within the meaning of the Fifth Amendment. *South Dakota v. Neville*, 459 U.S. 553, 103 S.Ct. 916, 74 L.Ed.2d 748 (1983).

In *State v. Roadifer*, 346 N.W.2d 438, 440 (S.D.1984), we held that

> [d]exterity tests are real physical evidence and are not protected by the constitutional privilege against self-incrimination. *City of Wahpeton v. Skoog*, 300 N.W.2d 243 (N.D.1980). These tests are based on the loss of coordination, balance and dexterity that results from intoxication, they do not force the subject to betray his subjective knowledge of the crime through communication or testimony. These tests merely compel the suspect to demonstrate his physical characteristics and condition at that time as a source of real or physical evidence to which observers may testify.

We also held that an audio tape that showed the manner in which a defendant performed verbal field sobriety tests would be admissible.

Our holding in *Roadifer* was in accord with the substantial weight of authority that roadside sobriety tests do not fall within the provisions of the Fifth Amendment. *See, e.g., People v. Ramirez*, 199 Colo. 367, 609 P.2d 616 (1980), and cases cited at note 8 therein. As the Supreme Court of Hawaii recently held in a case challenging the introduction of the results of field sobriety tests,

> The State of Hawaii sought neither "communications" nor "testimony" from Jacqueline Wyatt. What it sought of her was an exhibition of "physical characteristics of coordination," *State v. Arsenault*, 115 N.H. [109] at 113, 336 A.2d [244] at 247 [ (1975) ], since she was a possible source of physical evidence. Consequently, the field sobriety test was not rendered infirm by the constitutional-

ly guaranteed privilege against compulsory self-incrimination.

*State v. Wyatt*, 687 P.2d 544, 551 (Hawaii 1984).

It is true that if a motorist performs the field sobriety tests he provides evidence. He also provides evidence if he breathes, speaks, holds his eyes open, or leaves his vehicle at the officer's request and walks back to the officer's vehicle. Indeed, by the halting, fumbling, ineffectual manner in which a motorist produces his driver's license at the investigating officer's request, he may very well demonstrate beyond per adventure that he is under the influence of alcohol.

In *State v. Anderson*, 359 N.W.2d 887 (S.D.1984), we held "that SDCL 32–23–1.2 permits implementation of the PBT as a field sobriety test, which, like the traditional mental and physical dexterity tests, may be given upon reasonable suspicion that a person has violated SDCL 32–23–1." 359 N.W.2d at 892.

Having held in *Neville II* that the proscription of South Dakota Constitution Art. VI, § 9, is no broader than the Fifth Amendment to the United States Constitution, we now hold that the fact of the refusal to perform tests that do not themselves constitute communicative or testimonial evidence is equally non-communicative and non-testimonial in nature. To the extent that *Neville I* and *II* are to the contrary, those holdings are overruled.

## II.

### *Admissibility of Defendant's Pre-Arrest Statements*

As indicated above, the state introduced testimony regarding defendant's admissions that he had been drinking in Sioux Falls and in Montrose. Defendant made no pretrial motion to suppress these statements. Accordingly, he ordinarily would not be heard to question the admissibility of those statements for the first time on appeal. *See, e.g., State v. Bullis*, 255 N.W.2d 290 (S.D.1977). We therefore review this claim under the plain error rule,

SDCL 23A–44–15. *State v. Lohnes,* 324 N.W.2d 409 (S.D.1982). We conclude that on the face of the record it is manifest that defendant's statements were admissible.

■ In *Berkemer v. McCarty,* —— U.S. ——, 104 S.Ct. 3138, 82 L.Ed.2d 317 (1984), a defendant was stopped after a highway patrolman observed his car weaving in and out of his lane of travel. Based upon the defendant's difficulty in standing after he stepped out of his automobile, the investigating officer determined that the defendant would be charged with a traffic offense. The defendant was not advised of this fact, however, and the investigating officer then asked the defendant to perform a field sobriety test. Thereafter, the investigating officer asked the defendant whether he had been using intoxicants, to which the defendant responded that he had drunk two beers and had smoked several joints of marijuana a short time before. The investigating officer then formally placed the defendant under arrest.

Based upon these facts, the Supreme Court of the United States held that the initial stop of the defendant's automobile did not by itself render the defendant "in custody" within the meaning of *Miranda v. Arizona,* 384 U.S. 436, 86 S.Ct. 1602, 16 L.Ed.2d 694 (1966). The Court went on to hold that the defendant had failed to establish that he had been subjected to restraints comparable to those associated with a formal arrest between the time of the initial stop and the time that he was placed under arrest. The fact that the investigating officer had formed the intent to arrest the defendant as soon as the defendant had stepped out of his car was held to be irrelevant to the question whether the defendant was in custody at that time, the relevant inquiry being what a reasonable person in the defendant's position would have understood his situation to be. The Court concluded that nothing in the interaction between the investigating officer and the defendant gave any support to the defendant's contention that he was exposed to custodial interrogation at the scene of the stop, the Court stating:

From aught that appears in the stipulation of facts, a single police officer asked respondent a modest number of questions and requested him to perform a simple balancing test at a location visible to passing motorists. Treatment of this sort cannot fairly be characterized as the functional equivalent of formal arrest. —— U.S. at ——, 104 S.Ct. at 3152, 82 L.Ed.2d at 336 (footnote omitted).

*State v. Hall,* 353 N.W.2d 37 (S.D.1984), handed down one day after the United States Supreme Court's decision in *Berkemer,* is similar in both its holding and its facts to *Berkemer* and to the facts in the case before us. In *Hall,* the investigating officer observed the defendant's car parked in the middle of a main street intersection at 3:00 a.m. Upon approaching the automobile, the officer asked the defendant driver what his problem was, to which the defendant replied that he had driven the automobile to the point where it was parked in the intersection. We held that the trial court did not err in refusing to suppress the defendant's admission that he had driven his automobile to the point where the officer found it parked, reasoning that the officer's inquiry into the problem behind the defendant's presence in the intersection was part of general on-the-scene questioning not within the reach of the Fifth Amendment privilege against self-incrimination or the scope of *Miranda.*

We conclude that *Berkemer* and *Hall* effectively refute defendant's contention that his pre-arrest admissions regarding his drinking in Sioux Falls and in Montrose were not admissible.

## III.

### *Sufficiency of the Evidence*

■ Defendant contends that the evidence was insufficient to support the jury's finding that he had been driving while intoxicated. We do not agree. In reviewing the sufficiency of the evidence on appeal, the question for us is whether there is evidence in the record which, if believed by the jury, is sufficient to sustain a finding

of guilt beyond a reasonable doubt. In making that determination, we accept that evidence, and the most favorable inferences that can be fairly drawn therefrom, that will support the verdict. *See State v. Maves*, 358 N.W.2d 805 (S.D.1984), and cases cited therein.

■ When measured against this standard of review, the evidence is sufficient to support the verdict. The arresting officers' testimony regarding their observations of defendant's behavior and physical characteristics, as summarized above, was sufficient, if believed by the jury, as it obviously was, to establish that defendant was indeed under the influence of alcohol at the time he was stopped.

The judgment of conviction is affirmed.

FOSHEIM, C.J., concurs.

MORGAN, J., concurs specially.

HENDERSON, J., concurs in part and dissents in part.

GROSSHANS, Circuit Judge, dissents.

GROSSHANS, Circuit Judge, sitting for WUEST, Acting Justice, disqualified.

MORGAN, Justice (concurring specially).

The comparison of field sobriety tests to the chemical test administered under the Implied Consent Law, SDCL 32–23–10 *et seq.*, is like comparing apples to oranges. The former are for the purpose of establishing probable cause to arrest and can be administered upon suspicion only. The latter are for the purpose of determining guilt or innocence based upon statutorily established presumptions and arrest upon probable cause is a prerequisite to administration. The public acceptance of the chemical tests is so strong that when we recently approved the use of the preliminary breath test (PBT) as a field sobriety test, we pointed out the distinction between tests employed to determine probable cause for arrest and the usual implied consent tests and held the results of the PBT's inadmissible as evidence of guilt. *State v. Anderson*, 359 N.W.2d 887 (S.D.1984).

■ We are concerned here only with a refusal to cooperate with the administration of field sobriety tests. I view a refusal to cooperate to be admissible as evidence of consciousness of guilt, similar to cases involving: fabrication of evidence, *State v. Thompson*, 71 S.D. 319, 24 N.W.2d 10 (1976); false exculpatation, *United States v. Merrill*, 484 F.2d 168 (8th Cir.1973), *cert. denied*, 414 U.S. 1077, 94 S.Ct. 594, 38 L.Ed.2d 562; and flight, *State v. Cherrington*, 34 S.D. 462, 149 N.W. 421 (1914); *Marshall v. State*, 305 N.W.2d 838 (S.D. 1981).

In *State v. Neville*, 312 N.W.2d 723, 726 (S.D.1981) (reversed on other grounds), we rejected consciousness of guilt as grounds for admission of evidence of refusal to take the chemical test under the implied consent laws. As we pointed out there, in most instances where evidence of consciousness of guilt is involved "[a] defendant is not exercising a statutory right ... whereas here there is an absolute right under South Dakota law to refuse to submit to the blood tests." (Citation omitted.) There is no statutory ground for refusal to submit to the field sobriety tests. Therefore, there is no reason not to consider refusal as evidence of consciousness of guilt.

HENDERSON, Justice (concurring in part, dissenting in part).

I agree on the admissibility of defendant's pre-arrest statements and that there was sufficient evidence to support the jury's finding.

However, I dissent on the issue regarding defendant's refusal to perform field sobriety tests.

South Dakota Constitution Article VI, § 9, plainly states: "No person shall be *compelled* in any criminal case *to give evidence against himself....*" (Emphasis supplied.) In *State v. Neville*, 346 N.W.2d 425, 429 (S.D.1984) (*Neville II*), this Court held that a motorist's "refusal to submit to a blood test is evidence of a testimonial nature and thus within the protection of the privilege against self-incrimination."

This Court further held, however, that the refusal was not compelled and thus the refusal was not within the self-incrimination protection.

Two Justices of that Court held the refusal to be "forced," "coerced," and "compelled" and thus inadmissible at trial because it was within the protection afforded by the self-incrimination clause. *See State v. Neville*, 346 N.W.2d at 431–33 (Dunn, J., concurring in result; Henderson, J., concurring in part, dissenting in part). I have not deviated from my writing in *Neville II.* Nor do I do so now. I read where the majority is now deviating from its writings in *Neville I* and *II* and now holds that the refusal to perform tests does not constitute communicative or testimonial evidence.

The refusal to submit to field sobriety tests *is* evidence of a communicative or testimonial nature which is being compelled by the actions of the State, and thus is within the purview of the individual right against self-incrimination. Upon a police officer's request to perform field sobriety tests, a motorist is providing the State with evidence that may be used against him at trial. The motorist is compelled to provide direct evidence by performing the field tests or is compelled to provide evidence of a communicative or testimonial nature, by refusing to comply with the officer's request. A motorist can, of course, submit to the tests, and thereby provide direct evidence that may or may not prove his innocence. No amount of warning, however, can vitiate the compulsion inherent in this Hobson's choice, and the refusal to submit to field sobriety tests cannot be placed before the jury as evidence to convict. A trumpet of warning should be sounded. We are but a breath away from the conclusion that pre-arrest silence is admissible (citizen stands mute when requested to take test) and therefore incriminatory.

The State Legislature, unlike the blood test, has passed no law requiring field sobriety tests. In a word, there is no such law. This Court now makes such a law.

The doctrine of separation of powers, forsooth!

This decision seriously erodes *State v. Opperman*, 247 N.W.2d 673 (S.D.1976). As I pointed out in my writing in *Neville II*, this state opted that its highest Court will grant protection to its citizens under the South Dakota Constitution independent from federal interpretation. We chose to not follow a federally oriented interpretation of our constitution. We chose to follow a state-specific interpretation. *See* 95 Harv.L.Rev. 1324 (1982). Our constitution was independently adopted and should be a document of independent force. We, in South Dakota, have a right to independently determine our own constitutional questions; and, if we see fit, to grant a greater protection than required under the federal constitution. *Oregon v. Hass*, 420 U.S. 714, 95 S.Ct. 1215, 43 L.Ed.2d 570 (1975). The distinction between "evidence" in our state constitution and "testimony" in the federal constitution, is highly relevant.

GROSSHANS, Circuit Judge (dissenting).

I dissent. I would hold that the trial court erred in allowing the state to introduce into evidence appellant's refusal statement "I won't take your ... test" and reverse the conviction for this reason alone. I agree with the majority holding on the second issue concerning the admissibility of defendant's pre-arrest admissions.

Verbal statements of a defendant, whether pre-arrest or post-arrest, are communicative or testimonial evidence. The tests themselves, that is, the officer's observations of the defendant's performance, are non-communicative and non-testimonial. This conforms to our prior holding in *State v. Roadifer*, 346 N.W.2d 438 (S.D.1984), and the holding of the Supreme Court of Colorado in *People v. Ramirez*, 199 Colo. 367, 609 P.2d 616 (1980), and the Supreme Court of Hawaii in *State v. Wyatt*, 687 P.2d 544 (Hawaii 1984).

The refusal statements are an entirely different type of evidence than the performance results of the tests themselves. Therefore, this case is controlled by *State*

*v. Neville*, 346 N.W.2d 425 (S.D.1984), which was decided after appellant's trial.

In *Neville*, the arresting officer asked Neville to submit to a blood alcohol test. Neville refused and stated, "I'm too drunk, I won't pass the test." This court properly held that a defendant's refusal to submit to a blood test is an overt communication of the defendant's thoughts. As a result, a defendant's refusal to submit to a blood alcohol test is evidence of a testimonial nature and is within the protection of the privilege against self-incrimination preserved in South Dakota's Constitution. *Neville*, 346 N.W.2d at 429.

There is very little difference between a refusal to submit to a blood alcohol test and a refusal to submit to a field sobriety test. Both refusals are an overt expression of defendant's thoughts. Therefore, refusal to submit to a field sobriety test must also fall within the protection against self-incrimination found in our state constitution.

The United States Supreme Court in *South Dakota v. Neville*, 459 U.S. 553, 103 S.Ct. 916, 74 L.Ed.2d 748 (1983), held that the admission of a defendant's refusal to submit to a blood alcohol test into evidence does not offend the right against self-incrimination preserved in the federal constitution. However, this holding assumed appropriate procedural protections and our statutory scheme provides those protections. SDCL 32–23–10 and 32–23–10.1.

The element of compulsion or involuntariness is present in our statutory scheme. However, there is no impermissible coercion involved. Neville was given an option. He was warned that there could be adverse consequences if he refused to submit to a blood alcohol test. He had a choice albeit a difficult one as Justice O'Connor stated. While the state cannot require a defendant to submit to a blood alcohol test, at least the defendant has an option and is informed of the consequences. At that point a defendant can decide his course of action and waive his right against self-incrimination through his refusal to submit to the blood alcohol test.

In the instant case, the *Neville* holding that admission of a refusal to submit to a blood alcohol test is not offensive to the right against self-incrimination is inapplicable. There are no appropriate procedural protections for field sobriety tests. Appellant was not given a choice. He was not warned that if he refused to take the field sobriety test his refusal could be used at trial. There is no practical way the state can compel a suspect to perform field sobriety tests. How can anyone compel another to recite the alphabet or a tongue twister? How can an officer compel an individual to walk, let alone walk a straight line? Or compel a person to touch their nose with their forefinger? Impossible! It is reasonable for the state to impose a penalty for refusing as long as the penalty is known to the defendant.

Further, the instant case has an element of coercion. How much more subtle can the coercion or compulsion be when, as in this case, the defendant does not even know that he is trapped? If he performs the tests he provides evidence. If he refuses the test he provides evidence. This is compulsion of the most insidious nature. At least he should be given the choice of which type of evidence he is going to give against himself.

We have recently stated that constitutional rights, including those in the Bill of Rights, may be waived by a defendant as long as the waiver is made voluntarily, knowingly, and intelligently, with sufficient awareness of the relevant circumstances and likely consequences. *Jones v. State*, 353 N.W.2d 781 (S.D.1984). Implicit in this standard is the supposition that the right waived must be known.

Recently a Colorado court determined that a defendant has a right to refuse the field sobriety tests. In *People v. Carlson*, 677 P.2d 310 (Colo.1984), the defendant had been advised of his right to refuse and he agreed to do the tests. The Colorado court stated that the sole purpose of roadside sobriety testing was to acquire evidence of criminal conduct on the part of the suspect. The *Carlson Court* remanded the case

back to the trial court to determine whether the defendant's consent was intelligently and freely given. Knowledge of a right to refuse is one factor to be considered in determining whether the consent was voluntary. Therefore, the Colorado court recognized that a defendant has a right to refuse the tests. However, the Colorado court apparently has not addressed the precise issue we decide herein. That is whether an uninformed refusal is admissible evidence.

In the instant case, appellant was not advised of the consequences of his refusal to submit to field sobriety tests. Under our holding in *Neville, supra,* this violated appellant's state constitutional protection from giving evidence against himself. As a result, and unbeknownst to him, he provided testimonial or communicative self-incriminating evidence without knowledge of the consequences. Therefore, it cannot be said that appellant knowingly, intelligently, and voluntarily waived his constitutional protection from giving evidence against himself. The jury's note during deliberations indicates that the admission of this evidence constitutes prejudicial error.

I believe that South Dakota Constitution, art. VI, § 9, protects a person from compelled self-incrimination at all times.

Whenever an individual is requested to perform field sobriety tests by the police he is compelled to do one of two things—perform the tests or refuse. Under the majority holding in this case that person has no choice that will prevent self-incrimination. He is truly in a "Catch 22" situation. Worse yet, he does not even know it.

I believe that the majority holding places an impermissible burden on the exercise of state and federal constitutional rights. Neville was at least advised that there would be adverse consequences flowing from his refusal to take the test. Hoenscheid received no warnings; it cannot be said that he knew there would be adverse consequences flowing from his refusal. He did not have the option that Neville had. He had no way of knowing that the harbor he was sailing into was booby-trapped.