STATE of South Dakota, Plaintiff
and Appellee,

v.

Mac Earl AGER, Defendant
and Appellant.

No. 15669.

Supreme Court of South Dakota.

Considered on Briefs Aug. 31, 1987.

Decided Dec. 16, 1987.

Clair B. Ledbetter, Asst. Atty. Gen., Pierre, for plaintiff and appellee; Roger A. Tellinghuisen, Atty. Gen., Pierre, on brief.

Cynthia A. Howard, Deadwood, for defendant and appellant.

MORGAN, Justice.

Defendant, Mac Earl Ager (Ager), appeals from his conviction of attempted first-degree murder. Ager was sentenced to twenty-five years in the South Dakota Penitentiary. We affirm.

On May 10, 1984, Wayne Mayer (Mayer) was shot twice with a 30–30 caliber rifle at approximately 5:15 a.m. At the grand jury hearing and at the trial, Mayer testified that Ager threatened to "lay out in the weeds and blow me away" if he ever determined that Mayer was the person responsible for the arson to a piece of his equipment back in 1977. Two witnesses testified at trial that Mayer had told them about Ager's threat prior to the shooting incident. A cigarette butt was recovered from the scene which proved to have been smoked by a person with O Secretor blood. Ager voluntarily supplied a saliva sample to the Sheriff's Department, which tested as being an O Secretor blood type. State also requested the trial court issue a search warrant for withdrawal of a blood sample from Ager for purposes of testing for Secretor type. The warrant was granted over Ager's resistance and the testing positively verified that Ager's blood type was O Secretor.

Ager first contends that the prior consistent statements, testified to by Lorrie Olson (Olson) and Scott Turo (Turo), were erroneously admitted into evidence because they were vague (the time the statements were made was not definite) and indefinite (not consistent with Mayer's in-court testimony). Prior consistent statements are admissible into evidence under SDCL 19–16–2, which provides in pertinent part:

A statement is not hearsay if the declarant testifies at the trial or hearing and is subject to cross-examination concerning the statement, and the statement is

. . . .

(2) consistent with his testimony and is offered to rebut an express or implied charge against him of recent fabrication or improper influence or motive[.]

This is a verbatim adoption of Federal Rules of Evidence, 801(d)(1)(B). The test for admission of prior consistent statements was first laid out in *State v. Thompson*, 379 N.W.2d 295 (S.D.1985), as adopted from *United States v. Quinto*, 582 F.2d 224 (2d Cir.1978). This three-part test was applied in *State v. Carlson*, 392 N.W.2d 89 (S.D.1986):

'Before a prior consistent statement will qualify as nonhearsay under the rule, the proponent must demonstrate three things. First, he must show the prior consistent statement is consistent with the witness' in-court testimony. Second, he must establish that the statement is being used to rebut an express or implied charge against the witness of recent fabrication or improper motive or influence. Finally, the proponent must demonstrate that the prior consistent statement was made prior to the time the proposed motive to falsify arose.'

*Id.* at 91. As we have stated previously, the rationale for excluding prior consistent statements is that they are irrelevant unless the witness' credibility has been attacked. *Thompson, supra.*

Initially, we note that on appeal Ager does not deny that in his defense at trial he attempted to impeach the witnesses by implying recent fabrication. Rather, Ager rests his claim only on the first and third prongs of the test (consistency and timing). Consistency of prior consistent statements does not require a verbatim recitation of the witness' testimony. What the test does require is that the prior consistent statement be compatible with, and not contradictory to, the witness' testimo-

ny.[1]  Upon an examination of the record, we cannot say that either statement by witnesses Olson and Turo was contradictory to that of the witness, and both statements were placed in time prior to the date of the shooting incident.[2]  Therefore, the trial court was well within its discretion in admitting this evidence.

Ager next contends that the State should not have been allowed to rehabilitate Mayer with his grand jury testimony because it was not given at a time predating any reason to fabricate.  Judge Weinstein, in his treatise on federal rules, points out:

> Substantive use under Rule 801(d)(1)(B) is limited to situations where high probative value is most likely....  Evidence which counteracts the suggestion that the witness change his story in response to some threat or scheme or bribe by showing that his story was the same prior to the external pressure is highly relevant in shedding light on the witness' credibility.  Evidence which merely shows that the witness said the same thing on other occasions when his motive was the same does not have much probative force 'for the simple reason that mere repetition does not imply veracity.'

4 J. Weinstein & M. Burger, *Weinstein's Evidence* 801–150–151.

■ We adopted this view in *State v. Carlson, supra.*  Although the trial court was in error in allowing Mayer to read from his grand jury testimony because it was given after the shooting incident, leading to the conclusion that Mayer may then have had a motive to fabricate, we hold that such error was harmless.  The weapon and the cigarette butt were both tied to Ager and there were two other witnesses who testified to the prior consistent statement.  The worst that can be said of the grand jury testimony is that it was cumulative.

■ Ager's final complaint is that the trial court erred in granting the search warrant for a blood sample.  The argument is that the intrusion into Ager's privacy is unreasonable because there was no *need* for the evidence it would supply.  That the State already had a saliva sample, which indicated that Ager was an O Secretor, cannot be denied.

Under the Fourth Amendment to the United States Constitution and Article VI, § 11 of the South Dakota Constitution, individuals have a right to be secure in their persons against unreasonable searches and seizures.  The language of the South Dakota Constitution tracks almost verbatim that of the Fourth Amendment.

The question of the propriety of bodily intrusions in the light of the Fourth Amendment was considered by the United States Supreme Court in *Schmerber v. California,* 384 U.S. 757, 86 S.Ct. 1826, 16 L.Ed.2d 908 (1966).  The Court there stated that "the Fourth Amendment's proper function is to constrain, not against all intrusions as such, but against intrusions which are not justified in the circumstances, or which are made in an improper manner."  *Id.* 86 S.Ct. at 1834.  The Court summarized the issue as whether the test was justified and whether the procedures employed were reasonable.  The answer was yes, the test was justified (in that case without a warrant) in a DWI arrest and, yes, the extraction of blood samples was reasonable because it was a highly effective means of determining the degree to which a person is under the influence of alcohol.

In *Winston v. Lee,* 470 U.S. 753, 105 S.Ct. 1611, 84 L.Ed.2d 662 (1984), a case

---

1.  Consistent.  Having agreement with itself or something else; accordant; harmonious; congruous; compatible; compliable; not contradictory.  Black's Law Dictionary, 5th Edition (1979).

2.  Ager suggests that because Mayer did not relate to authorities, before trial, that he had told others of the threats, that evidence should not have been received.  The third prong of the test does not focus on when Mayer related to the authorities that he told others of the threats, but rather when those threats were related to Olson and Turo.

involving a surgical intrusion to extract a bullet that had great evidentiary value, the United States Supreme Court, relying on *Schmerber*, delineated four factors for determining the reasonableness of bodily intrusive tests. They are:

1. A crucial factor is the extent to which the procedure may threaten the safety or health of the individual;

2. The extent of the intrusion upon the individual's dignitary interest in personal privacy and bodily integrity;

3. The foregoing individual interests are weighed against the community's interest in fairly and accurately determining guilt or innocence; and

4. There must be a clear indication that desired evidence would be found if the test is undertaken.

*Winston*, 470 U.S. at 761–62, 105 S.Ct. at 1617–18, 84 L.Ed.2d at 669–70.

Ager's argument is apparently grounded in the third factor. Relying on *Winston, supra*, he urges that, in light of the saliva sample which the state already had, a blood test was wholly unnecessary. We do not agree. A saliva sample may not be as readily acceptable to a jury as a blood test. Since the State had one cigarette butt that contained saliva matching Ager's type, and one that tested negative, the jury might be inclined to discredit the efficacy of the saliva test. We are more disposed to consider the insignificant intrusion of a blood test, as compared to an operation, and thus hold that the trial court had probable cause to issue the search warrant.

Ager cites us to no decisions on our constitutional provision nor are we aware of any on this issue. In the past we have adopted *Schmerber* with regard to Fifth Amendment issues. *State v. Roadifer*, 346 N.W.2d 438 (S.D.1984). In view of the identity of the language in the constitutional provisions, we now adopt the reasoning of the United States Supreme Court as set out above in applying Article VI, § 11.

We affirm the conviction in all respects.

WUEST, C.J., and SABERS and MILLER, JJ., concur.

HENDERSON, J., concurs in result.

HENDERSON, Justice (concurring in result).

Per the majority opinion, this state's Fifth Amendment constitutional provision and the Fifth Amendment of the National Constitution contain identical language. This is false. Note that S.D. Const. art. VI, § 9, uses the language: "No person shall be compelled in any criminal case to *give evidence against himself....*"; whereas, the National Constitution, Bill of Rights, prescribes: "nor shall be compelled, in any criminal case, *to be a witness against himself....*" (Emphasis supplied.) Constitutional scholars, in many states, have recognized the differences in the language, believing the language such as that contained in South Dakota's constitution provides a broader protection for the citizens of a particular sovereign. This was the subject of distinguishment, by this special writer, in *State v. Hoenscheid*, 374 N.W.2d 128, 132–33 (S.D.1985) (Henderson, J., concurring in part and dissenting in part), and *State v. Neville (II)*, 346 N.W.2d 425, 432 (S.D.1984) (Henderson, J., concurring in part and dissenting in part).

I further concur in the result of this writing, as it cites *State v. Roadifer*, 346 N.W.2d 438 (S.D.1984), in which I also concurred in result because of the broad language therein contained which seemed, by decisional law once again in this state, to cut back on constitutional rights of the people of the State of South Dakota.

In the instant case, appellant's counsel admitted on page 14 of the brief: "[T]hat the intrusion involved in taking a blood sample is minimal." Concluding, appellant's counsel reflects: "In this way, this case is like *Schmerber v. California*, [384 U.S. 757, 86 S.Ct. 1826, 16 L.Ed.2d 908 (1966)]. However, unlike *Schmerber*, there is no need for the blood sample." I agree with the majority opinion that there was a need, contrary to appellant's brief, for the blood test in view of the fact that one cigarette butt tested negative. Without the blood test, a jury might well have speculated to the detriment of the State's

proof. Also, in considering the settled law that the taking of blood from the body is a minimal intrusion, appellant's arguments are not compelling.