**Gene L. WELCH, Petitioner,**

v.

**DISTRICT COURT OF VERMONT, Unit # 5, Washington County, Respondent.**

Civ. A. No. 78–221.

United States District Court,
D. Vermont.

Nov. 30, 1978.

was defective. When the driver appeared surprised at this information, the patrolman asked him to step out to see for himself. According to the patrolman's testimony at the state trial, the driver turned off the truck lights and then staggered to the rear of the truck to look at the lights, holding himself upright by grasping the back of the truck. When he saw that he had turned off the lights, he staggered back to the cab and fell into the cab while reaching to turn on the lights. The patrolman observed that the driver had bloodshot eyes and smelled of alcohol.

Because of these and other indicia of intoxication, the patrolman asked the driver to accompany him to the police station to take several tests to determine whether or not the driver was intoxicated. At the station the patrolman asked the driver to perform a speech test (which consists of the driver repeating phrases given to him by the officer) and a dexterity test. The driver refused to perform either test. The patrolman then read him the "Implied Consent Form" as a prerequisite to taking a breath test. The form is based upon Vermont's "implied consent law," 23 V.S.A. § 1202(a), codified at the time of this incident as 23 V.S.A. § 1202.

The driver refused to give his consent to the test and evidence of this refusal was presented to the jury in his trial for driving while intoxicated; the driver objected to this evidence and appealed his conviction to the Vermont Supreme Court. In *State v. Welch*, 394 A.2d 1115, Supreme Court Docket No. 169–77 (September 11, 1978), the court affirmed the conviction. On October 5, 1978 the Supreme Court stayed its mandate until November 2, 1978. After exhausting his state remedies, Welch petitioned this court, under 28 U.S.C. § 2254, for a writ of habeas corpus on the ground that this evidence was admitted in violation of his rights under the Fifth and Fourteenth Amendments. No evidentiary hearing was required since both parties agreed to submit the controversy on the basis of the state record.

William A. Nelson, Montpelier, Vt., for petitioner.

Richard A. Unger, Spec. Asst. Atty. Gen., Appellate Unit, Montpelier, Vt., for respondent.

## MEMORANDUM OF DECISION

HOLDEN, Chief Judge.

At three o'clock on the morning of October 3, 1976, a Barre, Vermont, patrolman noticed a pickup truck traveling down a Barre street without a functioning right rear taillight. The patrolman stopped the truck to inform the driver that the light

594

At the time of the trial the Vermont implied consent law did not require that an accused be allowed access to an attorney prior to submission to the test, but authorized the admission at trial of refusal evidence. The statute now allows access to counsel, but is otherwise unchanged. 23 V.S.A. §§ 1202(b), 1205(a) (Supp.1978).

On November 1, 1978 the petitioner filed a motion for stay of execution and for release, pending determination of his application for a writ of habeas corpus. At both parties' request, a hearing was held on the motion, with the Office of the Attorney General of Vermont representing the respondent. Because the court was persuaded that the petitioner had raised an important question concerning the Fifth and Fourteenth Amendment rights against self-incrimination within the teaching of *Schmerber v. California*, 384 U.S. 757, 86 S.Ct. 1826, 16 L.Ed.2d 908 (1966), and because the public defender, representing the petitioner, needed more time to file a reply to the respondent's answering papers, the petitioner's motion was granted. This court ordered a stay of execution of the petitioner's sentence until December 1, 1978.

Having considered the well-argued contentions of both parties, the court concludes that petitioner's Fifth and Fourteenth Amendment rights were not violated by the trial court's admission of the refusal evidence in the state trial. The application for a writ of habeas corpus must be denied.

The petitioner has summarized the evidence of refusal that was presented at trial:

At 3:00 a.m. police officers arrested Gene Welch and took him to the station for "D.W.I. processing," which included a reading of Vermont's Implied Consent Law. Tr. 15. The arresting officer testified in detail to what followed, and corroboration was given by another policeman. Tr. 21–30, 54–57.

Petitioner was asked if he understood and he said "No." The officer asked if he would take the test, and petitioner first answered "Yes" and then "No." Tr. 21–22. The officer then read the form again, and petitioner demanded "that the proce-

dure be recorded and that he have a witness present," either Mr. Potvin, who was then at the police station, or Doreen Bernier. Tr. 23. He again said "No," he did not understand the form, and "No" he had no questions. Asked to consent to the test he was silent. All through this second reading, "he was talking about how he wanted a witness and how the proceedings should be recorded." Tr. 25. The officer then put the Implied Consent Law into his own words, but petitioner again stood mute. Tr. 25–26. The form was then read yet again, and petitioner gave the same answers. Tr. 26. He again demanded a witness and said that if the arresting officer could have a witness (a second policeman, Officer Bedia, had come into the room), "why wasn't he [petitioner] allowed a witness." Tr. 27, 55–56.

He was finally taken to the lockup, where he made a phone call. After the call, he indicated "by his actions and his attitude" that he had changed his mind and would take the test. Tr. 27–28, 56. He was brought upstairs, but when asked two or three times to come to the "crimper" for the test, he "made no response at all." Tr. 29–30, 57. He was then taken back to the lockup and was advised, for the first time, of his *Miranda* rights. Tr. 30.

(Petitioner's memorandum, pp. 1–2).

The petitioner was not informed of his rights under *Miranda v. Arizona*, 384 U.S. 436, 86 S.Ct. 1602, 16 L.Ed.2d 694 (1966), until after the patrolman had attempted to administer the breath test. (Tr. 30). Petitioner argues that this refusal evidence was, therefore, compelled, incriminating and testimonial—and barred by the Fifth Amendment.

Petitioner concedes that there is no Fifth Amendment right to refuse a breath test and, therefore, evidence of the refusal cannot be characterized as a penalty levied against him for exercise of a constitutional right. *Schmerber v. California*, 384 U.S. 757, 86 S.Ct. 1826, 16 L.Ed.2d 908 (1966). Petitioner acknowledges that evidence must

be "testimonial" for the Fifth Amendment to apply and relies upon a footnote in *Schmerber* for the proposition that one's words of refusal to take a breath test are testimonial, although the breath test itself is not, citing *Schmerber, id.,* at 765, n.9, 86 S.Ct. 1826.

The *Schmerber* footnote states that the Court's holding—that the results of a blood test for alcohol are not "testimonial"— "would not necessarily govern had the State tried to show that the accused had incriminated himself when told that he would have to be tested." It is explained in the margin that a State may have to "forgo the advantage of any *testimonial* products of administering the test . . . ." (Emphasis in the original, 384 U.S. at 765, n.9, 86 S.Ct. at 1833.)

> Indeed, there may be circumstances in which the pain, danger, or severity of an operation would almost inevitably cause a person to prefer *confession* to undergoing the "search," and nothing we say today should be taken as establishing the permissibility of compulsion in that case.

(Emphasis added).

*Schmerber* provides little guidance for deciding whether or not the verbal refusal of an alcohol test is to be deemed "testimonial" in any given case. Nothing in the opinion suggests that all such verbalizations are testimonial. Certainly a confession would be testimonial, as the emphasized wording of the excerpt indicates.

The petitioner argues that the mere statement "No" constitutes communication of the subject's thought process to the effect: "Because I fear that the examination will produce evidence of my guilt, I refuse to permit it." (Petitioner's memorandum at 4, quoting *Constitutional Limitations on*

*the Taking of Body Evidence*, 79 Yale L.J. 1074, 1084 (1969).)

The flaw in this argument is that it confuses reasonable inferences with "communications." Perhaps one might infer from the refusal that it is an effort to conceal intoxication,[1] but evidence of the refusal and of the words of refusal, standing alone, does not constitute testimonial evidence of any thought, reason or excuse for the refusal. Evidence that the defendant said "No" is merely a verbal act that cannot be equated with evidence that the defendant said "No, I won't take it because it will show I'm drunk" or "No, I won't take it because I am legally drunk but I think I can drive a car anyway."

This distinction is not merely semantic. The Fifth Amendment's protection extends only to communications, not to voiceprints, fingerprints, photographs, measurements and gestures.[2] In short, the fact of the petitioner's refusal to submit to the breath test might have some probative effect, but does not render such evidence testimonial.

In *Fisher v. United States,* 425 U.S. 391, 410–411, 96 S.Ct. 1569, 48 L.Ed.2d 39 (1975), the Court acknowledged that the actions it had formerly categorized as non-communicative did have communicative qualities. Even a handwriting exemplar[3] is an admission by the author that he is able to write and that this particular exemplar is his writing. Nonetheless, an exemplar is not deemed to be "sufficiently testimonial for the purposes of the privilege." The Court conceded: "These questions perhaps do not lend themselves to categorical answers . . . ." 425 U.S. at 410, 96 S.Ct. at 1581.

---

1. In this case the trial judge instructed the jury that they could not make any inculpatory inference:

    Mr. Welch has an absolute right to refuse to submit to a test. The fact that he availed himself of his right to refuse cannot be considered by you on the ultimate issue of Mr. Welch's guilt or innocence of the offense of Driving While Under the Influence of Intoxicating Liquor. You may consider his refusal only to explain why the State has no scientif-

ic evidence here, specifically, in this instance, a breath test to present to you. (Tr. 33).

2. *Schmerber v. California*, 384 U.S. 757, 764, 86 S.Ct. 1826, 16 L.Ed.2d 908 (1966).

3. Handwriting exemplars were held to be non-testimonial in *Gilbert v. California*, 388 U.S. 263, 87 S.Ct. 1951, 18 L.Ed.2d 1178 (1967). Justice Brennan, the author of *Schmerber*, wrote the majority opinion.

The petitioner's refusal to take the test and his voiced "No," when refusing, did not communicate any reason or motive for refusal, as discussed above. His "No" may have been a verbal confirmation of the fact of his refusal and, as such, may have communicated this fact to the patrolman. But this degree or quality of communication is insufficient to fall within the ambit of the privilege; it is a mere incident to the fact of refusal. *Cf. Fisher v. United States, id.* And the petitioner's act of refusal was, in itself, clearly nontestimonial. *California v. Byers*, 402 U.S. 424, 91 S.Ct. 1535, 29 L.Ed.2d 9 (1971).[4]

Accordingly, the Clerk will enter an order dismissing the petitioner's application for a writ of habeas corpus.

4. In *Newhouse v. Misterly*, 415 F.2d 514 (9th Cir. 1969, *cert. den.* 397 U.S. 966, 90 S.Ct. 1001, 25 L.Ed.2d 258 (1970)), a similar argument was rejected concerning a refusal to submit to a blood test. In this Circuit an unwarned consent to a search does not amount to "testimonial" conduct within the meaning of *Schmerber*. *United States v. Lemon*, 550 F.2d 467, 472 (2d Cir. 1977); *United States v. Faruolo*, 506 F.2d 490, 495 (2d Cir. 1974); *United States ex rel. Carbone v. Manson*, 447 F.Supp. 611 (D.Conn. 1978).