[No. 40677-9-I.    Division One.    May 26, 1998.]

THE CITY OF SEATTLE, *Respondent*, v. LOYD STALSBROTEN, *Petitioner.*

---

*Gene M. Grantham*, for petitioner.

*Mark H. Sidran, City Attorney,* and *Richard E. Greene* and *Adam C. Eisenberg, Assistants,* for respondent.

COLEMAN, J. — Appellant Loyd Stalsbroten was convicted of driving while under the influence. The Superior Court acting as an appellate court in a RALJ appeal, affirmed the district court jury verdict on several grounds. We granted discretionary review solely on the issue of whether it was proper to admit Stalsbroten's refusal to take field sobriety tests (FSTs) at trial. Thus, the issue squarely before us is whether the refusal to perform a voluntary FST is inadmissible under federal or state constitutional protections against self-incrimination.

This is a matter of first impression for Washington appellate courts. We hold that a suspect's refusal to perform a voluntary FST is protected by constitutional provisions against self-incrimination because the refusal is testimonial in nature. The trial court erred by not suppressing evidence of Stalsbroten's refusal to perform FSTs.

In this case, however, the trial court's error was nevertheless harmless due to the presence of overwhelming untainted evidence of Stalsbroten's guilt. We affirm.

## STATEMENT OF FACTS

Just before midnight on a snowy winter evening, Seattle Police Officer Curt Boyle observed a vehicle pull out of a parking lot with its headlights off. Boyle followed the vehicle for several blocks and observed it drift back and forth between two traffic lanes while traveling at approximately

20 mph in a 35 mph speed zone. The vehicle did not pull over when Boyle activated his patrol car emergency lights, but did pull over shortly after Boyle activated the car sirens.

Boyle contacted Stalsbroten behind the steering wheel of the vehicle and immediately noticed a strong odor of alcohol on Stalsbroten's breath. In addition, Boyle observed that Stalsbroten's eyes were bloodshot and watery and his speech was lethargic, slurred, and hesitant. Boyle repeatedly asked Stalsbroten to produce his driver's license. After the third request, Stalsbroten responded, "What do you need?" Boyle then asked Stalsbroten to exit the vehicle and walk to a nearby sidewalk.

Once on the sidewalk and after an extended search through his wallet in which he passed over his license several times, Stalsbroten located his license and handed it to Boyle. Boyle noticed that Stalsbroten had difficulty standing still and was swaying from side to side approximately four to five inches. Stalsbroten introduced himself to Boyle approximately ten times, each time saying, "Hi. My name is Loyd Stalsbroten, what is yours?"

Boyle asked Stalsbroten if he would be willing to perform voluntary field sobriety tests. Stalsbroten declined. Boyle then placed Stalsbroten under arrest, handcuffed him, and offered to assist him in getting into the squad car. Stalsbroten refused help, claiming that he knew how to get in the car but ended up wedged in the back seat of the patrol car with his feet above his head. After giving *Miranda* warnings to Stalsbroten, *Miranda v. Arizona*, 384 U.S. 436, 86 S. Ct. 1602, 16 L. Ed. 2d 694, 10 A.L.R.3D 974 (1966), Boyle transported him to the north precinct. Stalsbroten contacted an attorney after arriving at the station and refused to take a blood alcohol test after being advised of the implied consent warning.[1]

The trial court denied Stalsbroten's motion to suppress

---

[1]The implied consent warning read to Stalsbroten consisted of the following: "You are under arrest for driving a motor vehicle while under the influence of intoxicating liquor. Further, you are now being asked to submit to a test of your

his refusal to take the FSTs on the basis that there was no constitutional bar to admitting his refusal, that FSTs are not testimonial in nature, and that his refusal was relevant to show consciousness of guilt. Stalsbroten was convicted of driving while under the influence of alcohol and unsuccessfully appealed his conviction to the Superior Court. Stalsbroten then timely filed this appeal alleging that the admission at trial of his refusal to perform FSTs violated his constitutional rights against self-incrimination.

## DISCUSSION

Self-incrimination:

██ The Fifth Amendment of the U.S. Constitution and article I, section 9 of Washington's Constitution proscribe state action that compels an individual to testify against him or herself. The U.S. Supreme Court has held that the Fifth Amendment privilege against self-incrimination "protects an accused only from being compelled to testify against himself, or otherwise provide the State with evidence of a testimonial or communicative nature." *Schmerber v. California*, 384 U.S. 757, 761, 86 S. Ct. 1826, 1830, 16 L. Ed. 2d 908 (1966) (footnote omitted). Washington's constitutional protection, although worded differently, has been held to provide the same level of protection as the Fifth Amendment of the U.S. Constitution.[2] *State v. Easter*, 130 Wn.2d 228, 235, 922 P.2d 1285 (1996); *State v. Moore*; 79 Wn.2d 51, 57, 483 P.2d 630 (1971). As a result, federal and Washington constitutional analysis of this issue will be identical.

Constitutional protections against self-incrimination do not cover actions that produce real or physical evidence.

breath, which consists of two (2) separate samples of your breath taken independently to determine alcohol content. You are now advised that you have the right to refuse this breath test; that, if you refuse, your privilege to drive will be revoked or denied by the Department of Licensing; that you have the right to additional tests administered by a qualified person of your own choosing; and, that your refusal to take the test may be used in a criminal trial. . . ."

[2] The pertinent portion of Washington's provision states: "No person shall be compelled in any criminal case to give evidence against himself[.]" Const. art. I, § 9. The Fifth Amendment states that no person "shall be compelled in any criminal case to be a witness against himself[.]" U.S. Const. amend. V.

*See Schmerber*, 384 U.S. at 765 (holding that blood tests, although an incriminating product of compulsion, are not subject to Fifth Amendment protections because they are neither "petitioner's testimony nor evidence relating to some communicative act or writing by the petitioner"); *City of Mercer Island v. Walker*, 76 Wn.2d 607, 612-13, 458 P.2d 274 (1969) (stating that "[t]he privilege against self-incrimination protects an accused only from being compelled to testify against himself or otherwise provide the state with evidence of a testimonial or communicative nature").

■ For similar reasons, Washington courts have repeatedly held that FSTs do not invoke Fifth Amendment protections. *See State v. Smith*, 130 Wn.2d 215, 223, 922 P.2d 811 (1996) (stating that Fifth Amendment protections do not attach to FSTs because they are nontestimonial in nature). "[I]n order to be testimonial, an accused's communication must itself, explicitly or implicitly, relate a factual assertion or disclose information." *Doe v. United States*, 487 U.S. 201, 210, 108 S. Ct. 2341, 101 L. Ed. 2d 184 (1988) (footnote omitted). In defining the meaning of "testimonial," the U.S. Supreme Court stated that "[w]henever a suspect is asked for a response requiring him to communicate an express or implied assertion of fact or belief, the suspect confronts the 'trilemma' of truth, falsity, or silence, and hence the response (whether based on truth or falsity) contains a testimonial component." *Pennsylvania v. Muniz*, 496 U.S. 582, 110 S. Ct. 2638, 2648-49, 110 L. Ed. 2d 528 (1990) (finding that some FSTs that require a verbal response, such as "what is the date of your sixth birthday," do result in a testimonial response because the response enables an inference as to the speaker's level of mental impairment).

The City argues that because it is clearly settled that the evidence being sought through FSTs is nontestimonial, a refusal to perform the FSTs is likewise nontestimonial. In support of their argument, the City analogizes an officer's ability to testify to the observable condition that a defend-

ant staggered during a "walk and turn" FST, with the officer's ability to testify that the defendant refused by words or conduct to perform an FST. However, refusing to perform an FST is fundamentally different in character from participating in nontestimonial FSTs. *See Commonwealth v. McGrail*, 419 Mass. 774, 647 N.E.2d 712, 714 (1995) (stating that the defendant's refusal to perform FSTs was, in essence, testimony concerning the defendant's belief on a central issue to the case); *State v. Neville*, 312 N.W.2d 723, 726 (S.D. 1982) (stating that a refusal is testimonial because it is "a tacit or overt expression or communication of defendant's thoughts"), *rev'd on other grounds*, 459 U.S. 553, 103 S. Ct. 916, 74 L. Ed. 2d 748 (1983).

In fact, refusing to perform an FST and participating in nontestimonial FSTs are responses to different questions. Refusing to perform an FST is a response to a question asking for participation, while performing an FST is a response to an officer's request for a particular action. The question inquiring into willingness to participate requires a testimonial response from the suspect because regardless of the answer given, the suspect communicates an implied belief to the officer. If the suspect agrees to perform the FST, the implied belief communicated to the officer is "Yes, I will perform the tests because I believe I can perform it successfully." If declined, the implied belief communicated by the suspect is that he or she will not be successful. Similarly, remaining silent raises the inference that the suspect either did not understand or that failure was feared. In any case, an implied belief is communicated by the words spoken. In contrast, the incriminating evidence acquired from nontestimonial FSTs comes from the physical manner in which the suspect speaks.

The City also cites authority from other jurisdictions to support its argument that constitutional protections against self-incrimination were not violated by admitting evidence that an accused refused to take an FST. *See State v. Hoenscheid*, 374 N.W.2d 128, 130 (S.D. 1985); *State v.*

*Mallick*, 210 Wis. 2d 427, 565 N.W.2d 245, 248, *review denied*, 568 N.W.2d 300 (1997); *Farmer v. Virginia*, 12 Va. App. 337, 404 S.E.2d 371, 373 (1991); *Arizona v. Superior Court*, 154 Ariz. 275, 742 P.2d 286, 289 (1987). We find these decisions unpersuasive.

In *Hoenscheid*, the South Dakota Supreme Court provides no reasoning for its statement that "the refusal to perform tests that do not themselves constitute communicative or testimonial evidence is equally noncommunicative and non-testimonial in nature." *Hoenscheid*, 374 N.W.2d at 130.

In *Mallick*, the Wisconsin Court of Appeals relied on precedent that made refusal to perform FSTs admissible in a probable cause hearing. *Mallick*, 565 N.W.2d at 247-48. In so doing, the *Mallick* court disregarded the fact that probable cause hearings have different objectives and evidentiary standards than trials. In addition, the *Mallick* court discounted the previous court's express qualification that permitting FST refusal evidence in probable cause hearings "should not be construed to mean that a defendant's refusal to submit to a field sobriety test may be used as evidence at trial." *Id.* at 248. Rather, the *Mallick* court was persuaded by Virginia's *Farmer* court. *Mallick* at 246, 247.

In deciding that the refusal to submit to a blood test and a refusal to perform an FST were analogous, the Virginia Court of Appeals in *Farmer v. Virginia* stated that "[i]n either case, the incriminating inference is drawn not from the testimonial act of the accused but from the physical act of the suspect." *Farmer*, 404 S.E.2d at 373. Not only does this statement gloss over the testimonial nature of a refusal, but it fails to distinguish between purely voluntary tests, those with implied consent provisions, and those that can be compelled.

Arizona authority is unpersuasive because unlike Washington, Arizona has determined that FSTs are not voluntary. *Arizona*, 742 P.2d at 288 (holding that when the initial stop is supported by reasonable suspicion, the suspect does

not have a constitutional right to refuse a request to perform FSTs).

The fact that FSTs are voluntary in Washington is the controlling distinction. *See City of Seattle v. Personeus*, 63 Wn. App. 461, 465, 819 P.2d 821 (1991) (stating that there was no legal obligation for defendant to perform an FST). In discussing both the nature of the communication and whether refusal to perform a voluntary FST was compelled, the Oregon Court of Appeals, when confronted with the same question that is now before us, stated:

> The state argues that the specie of evidence it seeks to use in this case is analogous to evidence of flight or a breath test refusal and is, therefore, admissible. We disagree. Evidence of refusal to take a field sobriety test is also communicative, but it is in a different category from evidence of flight or evidence of refusal to provide *required* non-communicative evidence. There is no statutory or other legal requirement that a driver take the field sobriety tests, either before or after arrest. While an officer may properly request a driver to do so, the officer may go no further. Because defendant had no obligation to take the test, there could also be no conditions placed on his refusal. Use of the fact that he refused enables the state to obtain communicative evidence to which it would otherwise have no right, as a result of defendant's refusal to provide noncommunicative evidence to which it also had no right. The situation is thus a true Hobson's Choice.

*State v. Green*, 68 Or. App. 518, 684 P.2d 575, 579 (1984).[3] The City discounts the persuasiveness of *Green* because it was decided under the Oregon constitution. However, the *Green* court expressly acknowledged the similarity between Oregon's constitutional provision against self-incrimination and the Fifth Amendment of the U.S. Constitution. *Green*, 684 P.2d at 577 n.3.

---

[3]The Oregon Supreme Court denied review and the Oregon Legislature subsequently enacted provisions that require officers to read implied consent warnings to motorists prior to asking them to perform FSTs. OR. REV. STAT. § 813.136 ("If a person refuses or fails to submit to field sobriety tests as required by ORS 813.135, evidence of the person's refusal or failure to submit is admissible in any criminal or civil action or proceeding arising out of allegations that the person was driving while under the influence of intoxicants.").

We are persuaded that the current voluntary nature of FSTs in Washington distinguishes this activity from other activities that produce nontestimonial evidence. A suspect's refusal to perform FSTs is implicitly communicative of his or her perception of intoxication. To hold that the refusal to perform a voluntary test is admissible at trial as evidence of a person's guilty state of mind would strip away all meaning from the voluntary nature of the test because any choice made by the suspect would assist the police in their investigation.

While asking a person to perform a voluntary FST does not fit the usual perception of police questioning or compulsion, the effect upon the suspect is identical. Officer Boyle, by asking Stalsbroten if he would perform an FST, put Stalsbroten in a position where evidence would be obtained regardless of the response.

We find that the trial court erred in failing to suppress Stalsbroten's refusal to take an FST and permitting the City to argue at closing that Stalsbroten's refusal indicated a guilty state of mind. The City's argument that a jury will question why the police did not conduct FSTs if evidence of the refusal is suppressed is a practical matter that is best addressed by the trial court. We believe that carefully crafted jury instructions can protect the defendant's rights while preventing prejudice against the City. Certainly, the City should be allowed to admit evidence of refusal if the defense opens the door.

Harmless Error:

■ A constitutional error is harmless if the court finds beyond a reasonable doubt that any reasonable jury would reach the same result absent the error. *State v. Easter,* 130 Wn.2d 228, 242, 922 P.2d 1285 (1996). We find that the District Court's error in permitting evidence of Stalsbroten's refusal to perform an FST was harmless.

First, the arresting officer personally observed Stalsbroten driving without his headlights at about midnight on a snowy February night. Second, Stalsbroten's car drifted

back and forth between two lanes of traffic at a speed well below the limit. Third, Stalsbroten failed to pull over after the officer activated his lights. Fourth, Stalsbroten's eyes were bloodshot and watery, his breath reeked of alcohol, and his speech was lethargic and slurred. Fifth, the officer had to repeatedly ask to see Stalsbroten's license and Stalsbroten had difficulty finding his license in his wallet. Sixth, while standing on the sidewalk, Stalsbroten swayed from side to side approximately four to five inches. Seventh, Stalsbroten repeatedly introduced himself to the officer. Eighth, Stalsbroten insisted on getting himself into the officer's squad car after being arrested and proceeded to get himself wedged in the vehicle with his feet above his head. Ninth, Stalsbroten refused to take a breath alcohol test and signed an implied consent form that advised him that refusal could be used as evidence in a criminal trial. Finally, the officer, during the hour or so that he was in contact with Stalsbroten, observed Stalsbroten exhibit mood swings from crying, to threatening, to cordial.

Thus, even without evidence that Stalsbroten refused to perform an FST, it is beyond a reasonable doubt that a reasonable jury would have found Stalsbroten guilty of driving under the influence.

Accordingly, we affirm.

BAKER and ELLINGTON, JJ., concur.

Review granted at 136 Wn.2d 1028 (1998).