978 P.2d 1059 (1999)
138 Wash.2d 227
CITY OF SEATTLE, Petitioner,
v.
Loyd STALSBROTEN, Respondent.
No. 66998-8.
Supreme Court of Washington, En Banc.
Argued March 9, 1999.
Decided June 17, 1999.
*1061 Adam Eisenberg, Seattle Law Dept. Crim. Div., Seattle, for Petitioner.
Gene M. Grantham, Seattle, for Respondent.
*1060 DURHAM, J.
This case presents the question of whether it is constitutionally permissible for a trial court to admit evidence that a drunk driving defendant refused to perform field sobriety tests. Specifically, we must determine whether admitting such evidence violates the defendant's Fifth Amendment right against self-incrimination. Because we conclude that a defendant's refusal to perform a field sobriety test (FST) is nontestimonial evidence that is not compelled by the State, we hold that the Fifth Amendment does not prohibit admitting such refusal evidence. Accordingly, we conclude that the Court of Appeals erred in holding that admitting evidence of Stalsbroten's refusal to perform an FST violated his right against self-incrimination. Finding no constitutional error in the trial court's admission of this evidence, we affirm Stalsbroten's conviction for drunk driving.

I
On February 14, 1995, Seattle Police Officer Curt Boyle observed Loyd Stalsbroten's vehicle pull out of a parking lot after dark without its headlights on. Stalsbroten drove well below the posted speed limit, drifted between several lanes of traffic, and failed to pull over when Officer Boyle activated his emergency lights. Stalsbroten pulled over only after Boyle sounded his siren.
When Officer Boyle approached the vehicle to speak to the driver, he smelled a "strong odor of intoxicants." Transcript of Proceedings (City's Response to Motion for Discretionary Review) at 41. Stalsbroten's eyes were bloodshot and tearing, and his speech was slurred and lethargic. After exiting the vehicle, Officer Boyle reported that Stalsbroten "had a hard time just standing still" and swayed four or five inches back and forth while standing on flat pavement. Id. at 44. During the course of Officer Boyle's interactions with Stalsbroten at the scene, Stalsbroten introduced himself to the officer approximately 10 times, each time repeating "Hi. My Name is Loyd Stalsbroten, what is yours." Id. at 49-50. Officer Boyle then asked Stalsbroten to perform some FSTs to see if it was safe for him to drive home. Officer Boyle informed him that the tests were voluntary, and Stalsbroten refused to take the tests, responding "No way." Id. at 72-73.
Officer Boyle arrested Stalsbroten for driving under the influence, handcuffed him, and escorted him to the police car. Stalsbroten insisted that he could get into the car without assistance, but he eventually ended up "wedged ... in the car with his feet above his head." Id. at 46. After situating the defendant in the back of his car, Officer Boyle advised him of his Miranda warning and transported him to the police station. Miranda v. Arizona, 384 U.S. 436, 86 S.Ct. 1602, 16 L.Ed.2d 694, 10 A.L.R.3d 974 (1966). At the station, Officer Boyle read Stalsbroten the Implied Consent Warnings, and Stalsbroten refused to take a Breathalyzer test.
Before trial, Stalsbroten moved to suppress his refusal to take the FSTs. The municipal court denied this motion, concluding that there was no constitutional bar to admitting evidence of the refusal and that such evidence was relevant to show Stalsbroten's consciousness of his guilt. At trial, Stalsbroten testified that he had consumed three tall glasses of whiskey and 7-Up within roughly two hours before the arrest. A unanimous jury found Stalsbroten guilty of Driving while Intoxicated. Stalsbroten appealed his conviction to the King County Superior Court. The Superior Court affirmed, specifically concluding that there was no error in admitting evidence of Stalsbroten's refusal to take the FSTs. Stalsbroten then sought discretionary review by the Court of Appeals.
The Court of Appeals granted discretionary review solely on the issue of whether Stalsbroten's refusal to perform an FST was inadmissible under state or federal constitutional *1062 protections against self-incrimination. City of Seattle v. Stalsbroten, 91 Wash.App. 226, 957 P.2d 260 (1998). The court held that "a suspect's refusal to perform a voluntary FST is protected by constitutional provisions against self-incrimination because the refusal is testimonial in nature." Id. at 228, 957 P.2d 260. According to the Court of Appeals, the trial court erred in not suppressing the evidence of Stalsbroten's refusal. However, the Court of Appeals ultimately concluded that the error was harmless beyond a reasonable doubt due to the "overwhelming untainted evidence of Stalsbroten's guilt." Id. The court therefore affirmed Stalsbroten's conviction.

II
The right against self-incrimination is protected by the Fifth Amendment, which provides that no person "shall be compelled in any criminal case to be a witness against himself." U.S. CONST. AMEND. V.[1] This right protects a defendant from being compelled to provide evidence of a "testimonial or communicative nature," or from testifying against himself. Schmerber v. California, 384 U.S. 757, 761, 86 S.Ct. 1826, 16 L.Ed.2d 908 (1966). However, the Fifth Amendment does not prevent the admission of physical or real evidence. A state may compel physical or real evidence, but may not compel testimonial evidence. The element of compulsion or involuntariness is central to the right against self-incrimination: a defendant's voluntary production of testimonial evidence is not protected by the Fifth Amendment. South Dakota v. Neville, 459 U.S. 553, 562, 103 S.Ct. 916, 74 L.Ed.2d 748 (1983). Thus, admitting evidence that a defendant refused to take a FST violates his right against self-incrimination only if (1) the refusal evidence is testimonial and (2) the evidence is impermissibly compelled by the State.

A
As to the first requirement, we conclude that evidence of a defendant's refusal to perform an FST is nontestimonial. Testimonial evidence is a communication that "explicitly or implicitly, relate[s] a factual assertion or disclose[s] information." Pennsylvania v. Muniz, 496 U.S. 582, 594, 110 S.Ct. 2638, 110 L.Ed.2d 528 (1990) (quoting Doe v. United States, 487 U.S. 201, 210, 108 S.Ct. 2341, 101 L.Ed.2d 184 (1998)). As noted above, the Fifth Amendment only protects testimonial evidence. Accordingly, an accused may not be compelled to reveal, either directly or indirectly, "his knowledge of facts relating him to the offense or from having to share his thoughts and beliefs with the Government." Id. at 595, 110 S.Ct. 2638. In contrast, the Fifth Amendment offers no protection against the compulsion to provide blood samples, fingerprints, measurements, voice or writing samples, "to appear in court, to stand, to assume a stance, to walk, or to make a particular gesture." Schmerber, 384 U.S. at 764, 86 S.Ct. 1826. Nontestimonial evidence is unprotected by the Fifth Amendment.
We have repeatedly held that the performance of an FST is nontestimonial. State v. Smith, 130 Wash.2d 215, 223, 922 P.2d 811 (1996); Heinemann v. Whitman County, 105 Wash.2d 796, 801, 718 P.2d 789 (1986); City of Mercer Island v. Walker, 76 Wash.2d 607, 612-13, 458 P.2d 274 (1969). Field sobriety tests produce only real or physical evidence, and do not communicate testimonial evidence. Walker, 76 Wash.2d at 612-13, 458 P.2d 274. In this way, the performance of an FST is similar to a defendant's appearance at a police lineup or a defendant's other physical actions. Id. Because a defendant's performance of an FST is nontestimonial, Fifth Amendment protections do not apply.
The Court of Appeal in this case acknowledged that the performance of an FST is nontestimonial, but distinguished between a suspect's performance of an FST and a suspect's response to a question about whether *1063 he is willing to take the test. City of Seattle v. Stalsbroten, 91 Wash.App. 226, 232, 957 P.2d 260 (1998). According to the court, the question of whether the performance of an FST produces nontestimonial evidence is separate from the question of whether the request to perform an FST produces nontestimonial evidence. Id. The court agreed that the performance of an FST is nontestimonial, but concluded that a question about a suspect's willingness to participate in an FST requires a testimonial response. Id. According to the court, a suspect's refusal to perform an FST communicates to the officer the suspect's implied belief that he or she thinks he or she will fail the test. Id. Given the fact that the refusal communicates a suspect's "perception of intoxication," the court concluded that the refusal to submit to FSTs is testimonial and therefore constitutionally protected. Id. at 235, 957 P.2d 260.
We disagree with this distinction. A suspect's refusal to perform an FST is no more testimonial than the suspect's actual performance of an FST. State v. Hoenscheid, 374 N.W.2d 128 (S.D.1985). Just because refusal evidence has probative value does not mean that such evidence is testimonial. See Welch v. District Court of Vt., 461 F.Supp. 592, 595 (D.Vt.1978) (discussing refusal evidence in the context of Breathalyzer tests) aff'd, 594 F.2d 903 (2d Cir.1979). A refusal to submit to sobriety tests is not a statement communicating testimonial evidence; rather, the refusal "is best described as conduct indicating a consciousness of guilt." Newhouse v. Misterly, 415 F.2d 514, 518 (9th Cir.1969) (discussing refusal evidence in the context of blood alcohol tests). The act of refusal "merely exposes [the defendant] to the drawing of inferences, just as does any other act." State v. Wright, 116 N.M. 832, 835, 867 P.2d 1214, 1216 (Ct.App.1993) (quoting McKay v. Davis, 99 N.M. 29, 31, 653 P.2d 860, 861 (1982)).
The argument that a refusal to take an FST communicates the suspect's belief that the test will produce evidence of his or her guilt confuses reasonable inferences with communications. See Welch, 461 F.Supp. at 595. "Perhaps one might infer from the refusal that it is an effort to conceal intoxication, but evidence of the refusal and of the words of refusal, standing alone, does not constitute testimonial evidence of any thought, reason or excuse for the refusal." Id. (footnote omitted). Because a defendant's refusal to perform an FST is not testimonial evidence, Fifth Amendment protections do not apply.
In light of the fact that a defendant's refusal to perform an FST is nontestimonial, we conclude that the admission of the refusal evidence at trial does not violate the defendant's right against self-incrimination. We will next briefly discuss the second prong of our Fifth Amendment analysis: whether Stalsbroten's refusal to take the FST was impermissibly compelled. Clear precedent from this court and the United States Supreme Court indicates that such refusal evidence is not compelled.

B
Stalsbroten's refusal to perform FSTs was not impermissibly compelled by the State. The Fifth Amendment prohibits only the use of coercion or "physical or moral compulsion" to obtain testimonial evidence. South Dakota v. Neville, 459 U.S. 553, 562, 103 S.Ct. 916, 74 L.Ed.2d 748 (1983) (quoting Fisher v. United States, 425 U.S. 391, 397, 96 S.Ct. 1569, 48 L.Ed.2d 39 (1976)). Such compulsion exists when a defendant has no choice but to offer evidence against himself. In the classic context of a Fifth Amendment violationforcing a defendant to testify impermissible compulsion is evidenced by the "cruel trilemma" facing the defendant at trial: testify and submit to self-incrimination; testify falsely, risking perjury; or refuse to testify, risking contempt of court. Id. at 563, 103 S.Ct. 916. It is well established that the Fifth Amendment prevents the state from forcing this choice upon a defendant. Id. The right against self-incrimination may also prevent the state from presenting a defendant with a choice that involves such pain, danger, or severity that the defendant inevitably will be forced to prefer confession. Schmerber, 384 U.S. at 765 n. 9, 86 S.Ct. 1826.
In South Dakota v. Neville, the Supreme Court concluded that admitting evidence of a *1064 defendant's refusal to submit to blood alcohol tests did not compel the defendant to be a witness against himself. Neville, 459 U.S. at 562, 103 S.Ct. 916. "[N]o impermissible coercion is involved when the suspect refuses to submit to take the [blood alcohol] test." Id. Fifth Amendment values are not offended when the state offers a suspect the choice of taking a blood alcohol test or using his refusal against him. This is true because there is no constitutional right not to take the blood alcohol test. According to the Court, blood alcohol tests are so "safe, painless, and commonplace," that the State could legitimately require suspects to take the test. Id. at 563, 103 S.Ct. 916 (citing Schmerber, 384 U.S. at 771, 86 S.Ct. 1826). Given that the State could require suspects to take the test, the State can also legitimately offer suspects the option of refusing the test, with attendant penalties.
This court, following United States Supreme Court precedent, has held that no impermissible coercion is involved in admitting evidence of a defendant's refusal to take a blood alcohol test. State v. Zwicker, 105 Wash.2d 228, 244, 713 P.2d 1101 (1986). Allowing the defendant's refusal to be used in court is not inherently coercive, especially in light of the fact that the legislature could remove the defendant's right to refuse altogether. "Attaching penalties to the exercise of the statutory right of refusal is not inherently coercive where the Legislature could withdraw this privilege altogether." Id. at 242, 713 P.2d 1101.
In contrast to blood alcohol and Breathalyzer tests, a defendant's right to refuse to participate in FSTs is not specifically protected by statute. See RCW 46.20.308(2). However, the absence of an implied consent statute does not distinguish the admissibility of refusal evidence in the context of FSTs. "[A] defendant's statements refusing to submit to reasonable physical evidence tests are admissible because they are not the product of impermissible coercion, not because statutes authorize their admission." State v. Wright, 116 N.M. 832, 867 P.2d 1214, 1216 (Ct.App.1994). See also State v. Superior Court of Arizona, 154 Ariz. 275, 742 P.2d 286, 289 (Ct.App.1987) ("We thus find the ... distinction ... between a refusal under an implied consent statute and a refusal to take a constitutionally-permissible field sobriety test to be meaningless."). Without impermissible coercion, Fifth Amendment privileges simply do not apply.
Like blood alcohol and Breathalyzer tests, it is undisputed that in Washington, FSTs are voluntary and a Driving Under the Influence suspect has no legal obligation to perform an FST. City of Seattle v. Personeus, 63 Wash.App. 461, 819 P.2d 821 (1991). Attaching consequences to the exercise of the common law right to refuse to submit to an FST is no different from attaching consequences to the exercise of a statutory right of refusal. Just as with blood alcohol and Breathalyzer tests, admitting refusal evidence in the context of FSTs is equally permissible in light of the fact that the State could legally require suspects to perform FSTs.
We hold that admitting evidence of a defendant's refusal to perform an FST at trial does not impermissibly compel the defendant to give evidence against himself within the meaning of the Fifth Amendment. Our conclusion that it is constitutionally permissible to admit evidence of a defendant's refusal to take FSTs is thus based upon both our belief that the evidence is nontestimonial, and upon our precedent indicating that the evidence is not compelled.

III
It is important to note that our holding is consistent with analogous case law on the admissibility of refusal evidence in the context of Breathalyzers and blood alcohol tests. The United States Supreme Court has held that admitting evidence at trial of the defendant's refusal to submit to blood alcohol tests does not offend the privilege against self-incrimination. Neville, 459 U.S. at 554, 103 S.Ct. 916. Likewise, admitting evidence of a defendant's refusal to take a Breathalyzer test does not violate the Fifth Amendment. Pennsylvania v. Muniz, 496 U.S. 582, 604 n. 19, 110 S.Ct. 2638, 110 L.Ed.2d 528 (1990). Washington has followed this precedent, holding that admitting evidence of a defendant's refusal to submit to blood alcohol *1065 or Breathalyzer tests does not violate a defendant's right against self-incrimination. State v. Zwicker, 105 Wash.2d 228, 713 P.2d 1101 (1986); State v. Long, 113 Wash.2d 266, 272-73, 778 P.2d 1027 (1989). We see no reason to distinguish between chemical blood tests, Breathalyzers, and FSTs for these purposes. These cases are not based upon the unique nature of the different tests, but rather upon the general principle that refusing to submit to physical tests does not implicate the Fifth Amendment. To hold that the admission of refusal evidence is constitutionally permissible in the context of blood and breath tests but not in the context of FSTs would undermine the rationale upon which these cases rely.
Our conclusion is further bolstered by the fact that the majority of courts that have considered this issue have concluded that the admission of evidence that a defendant refused to perform an FST does not violate the defendant's right against self-incrimination. State v. Taylor, 648 So.2d 701 (Fla.1995); State v. Washington, 498 So.2d 136 (La.Ct. App.1986); Wright, 116 N.M. 832, 867 P.2d 1214 (1993); Commonwealth v. McConnell, 404 Pa.Super. 439, 591 A.2d 288 (1991); State v. Hoenscheid, 374 N.W.2d 128 (S.D.1984); Dawkins v. State, 822 S.W.2d 668 (Tex.Ct. App.1991); Farmer v. Commonwealth, 12 Va.App. 337, 404 S.E.2d 371 (1991); State v. Mallick, 210 Wis.2d 427, 565 N.W.2d 245 (Ct.App.1997).

IV
We conclude that admitting evidence of a drunk driving suspect's refusal to perform FSTs does not violate the suspect's privilege against self-incrimination.[2] Not only is such evidence nontestimonial, but it is not compelled by the State. For these reasons, Fifth Amendment protections do not apply to evidence of a defendant's refusal to take FSTs. The municipal court did not err in allowing testimony about Stalsbroten's refusal to perform the FSTs. We therefore reverse the Court of Appeals on the issue of whether the trial court erred in admitting the refusal evidence. Admitting evidence of a defendant's refusal to perform FSTs presents no Fifth Amendment problems. Accordingly, Stalsbroten's conviction should be affirmed.
GUY, C.J., MADSEN, TALMADGE, and IRELAND, JJ., concur.
JOHNSON, J. (dissenting).
Without critical analysis the majority flatly concludes a suspect's refusal to take a field sobriety test produces the same objective, nontestimonial evidence as the performance of the test itself. The majority never explains just how a refusal produces objective manifestations of lack of physical coordination or mental confusion. Indeed, the majority admits, as does the City of Seattle, that evidence of refusal was admitted solely to prove Stalsbroten's self-inculpatory knowledge of guilt. A defendant's verbal response to police questioning that is admitted specifically and solely to reveal the defendant's state of mind, thought, or belief goes to the heart of "testimonial" self-incrimination within the meaning of the Fifth Amendment, and the Court of Appeals in this case correctly so held. City of Seattle v. Stalsbroten, 91 Wash. App. 226, 235, 957 P.2d 260 (1998).
A communication is testimonial if it "`explicitly or implicitly [] relate[s] a factual assertion or disclose[s] information.'" Pennsylvania v. Muniz, 496 U.S. 582, 594, 110 S.Ct. 2638, 110 L.Ed.2d 528 (1990) (quoting Doe v. United States, 487 U.S. 201, 210, 108 S.Ct. 2341, 101 L.Ed.2d 184 (1988)). Thus, the Fifth Amendment[1] right against *1066 self-incrimination is implicated whenever an accused is compelled "`to reveal, directly or indirectly, his knowledge of fact relating him to the offense or from having to share his thoughts and beliefs with the Government.'" Muniz, 496 U.S. at 595, 110 S.Ct. 2638 (quoting Doe, 487 U.S. at 213, 108 S.Ct. 2341). The right is intended "to prohibit the inquisitorial method of investigation in which the accused is forced to disclose the contents of his mind, or speak his guilt." State v. Easter, 130 Wash.2d 228, 236, 922 P.2d 1285 (1996) (citing Doe, 487 U.S. at 210-12, 108 S.Ct. 2341).
In the present case, the trial court found Stalsbroten's refusal to perform the field sobriety test (FST) relevant and admissible specifically because it communicated Stalsbroten's "consciousness of his guilt." Clerk's Papers at 27. The prosecution commented on the refusal in its opening statement and elicited direct and rebuttal testimony from the arresting officer that Stalsbroten had responded, "No way," when the officer asked whether he would be willing to take the test. On cross-examination, the prosecution asked:
And ... is it true that the reason you said, "No way" to the field tests is because you were afraid they would show how physically impaired you actually were from the alcohol? Isn't that true, Mr. Stalsbroten?
Partial Tr. of Proceeding (July 6, 1995) at 134 (City's Resp. to Mot. for Discretionary Review) (hereinafter "Transcript"). In closing, the prosecutor then argued the point at length:
Members of the jury. So, what does one do when one is a fairly smart person... do when they're caught and they know they're caught red-handed and they've had too much to drink and they're pulled over for doing something stupid. He knows ... that they're going to smell like alcohol; start hiding the ball; start limiting the damage; start engaging in damage control. The City submits that that's exactly what Mr. Stalsbroten did in this case; did not do the field sobriety tests; would not blow into the breath machine.
Transcript at 142. And then again:
He was asked ... the officer asked the defendant to get out ... and step out of his vehicle and perform some field sobriety tests.... [H]e was standing there ... having trouble standing. He refused to do the field sobriety tests, with no explanation... at the time.
Transcript at 144.
The record leaves no doubt, therefore, the evidence of refusal in this case was offered for its testimonial component. It was intended to disclose the contents of Stalsbroten's mind, to reveal self-inculpatory thoughts and beliefs related to the commission of the crime. In short, evidence of refusal was used as a confession. The trial court admitted it for this purpose; the prosecution elicited testimony of it during its case in chief for this purpose; the jury was specifically urged to rely on it for this purpose.
Nevertheless, despite the indisputable and admitted testimonial purpose for which the refusal was offered in this case, the majority flatly concludes "[a] suspect's refusal to perform an FST is no more testimonial than the suspect's actual performance of an FST." Majority at 1062-63. This conclusion, however, does not survive critical analysis. An FST is admissible precisely because it does not communicate the suspect's thoughts or beliefs. Rather, an FST is "premised upon the relationship between intoxication and the externally manifested loss of coordination...." State v. Arsenault, 115 N.H. 109, 113, 336 A.2d 244 (1975) (emphasis added). Like Breathalyzer or blood alcohol tests, field sobriety tests "do not seek to compel from the defendant any knowledge he might have; nor do they involve the defendant's communicative faculties in any way. They only compel him to exhibit his physical characteristics of coordination." Arsenault, 115 N.H. at 113, 336 A.2d 244 (citations omitted). See also State v. Wyatt, 67 Haw. 293, 302, 687 P.2d 544 (1984); People v. Ramirez, 199 Colo. 367, 373-74, 609 P.2d 616 (1980), overruled on other grounds by People v. Archuleta, 719 P.2d 1091 (Colo.1986). Accordingly, the FST does not produce "testimonial" evidence, but produces only real or *1067 physical evidence that does not fall within the privilege against self-incrimination.
Conversely, to the extent action requested of a drunk driving suspect produces evidence which is incriminating not just because of its physical delivery, but also because of its content, it is testimonial. Muniz, 496 U.S. at 593, 110 S.Ct. 2638 (holding that requesting defendant to state the date of his sixth birthday required a testimonial response because "the incriminating inference of mental confusion is drawn from a testimonial act" as much as from its physical delivery). It is beside the point that, if consented to, the test itself would have produced objective evidence of inebriation. "The correct question for present purposes is whether the incriminating inference [of inebriation] is drawn from a testimonial act or from physical evidence." Muniz, 496 U.S. at 593, 110 S.Ct. 2638. As the facts of this case show, evidence of refusal is offered precisely because of its incriminating testimonial quality.
Unlike the objective evidence produced by the test itself, evidence of a defendant's refusal to take an FST is relevant to the prosecution's case in chief precisely because it communicates the thoughts and beliefs of the defendant. State v. Green, 68 Or.App. 518, 522, 684 P.2d 575 (1984) ("Evidence of a defendant's refusal is relevant in that it shows that he believed that the results of the test would tend to incriminate him and thus shows that he believed that he was guilty. Specifically, the state wants the jury to infer, from the fact of a defendant's refusal, that he is saying, `I will not take the field sobriety tests because I believe I will fail them.'"), overruled on other grounds by State v. Panichello, 71 Or.App. 519, 692 P.2d 720 (1984) and superseded by statute as stated in State v. Fish, 115 Or.App. 609, 839 P.2d 278 (1992), rev'd, 321 Or. 48, 56, 893 P.2d 1023 (1995) (finding statute unconstitutional and reiterating that refused evidence is "testimonial."); Opinion of the Justices to the Senate, 412 Mass. 1201, 1211, 591 N.E.2d 1073 (1992) ("[I]f refusal evidence has any relevance to any issue essential to the prosecution's case, it is because it is reflective of the knowledge, understanding, and thought process of the accused.").
Indeed, we have previously held that refusal evidence is irrelevant to the State's case in chief except for its testimonial component. See State v. Zwicker, 105 Wash.2d 228, 233, 238, 713 P.2d 1101 (1986) (evidence of refusal to take a Breathalyzer test is not relevant to prosecution's case in chief except to draw inference of guilt or innocence and is, therefore, inadmissible under implied consent statute). There, we reasoned the statute prohibited the State from arguing "that guilt can be inferred from the defendant's refusal or that the defendant's refusal can give rise to an inference that he had conscious doubts as to whether or not the test would vindicate his sobriety." Zwicker, 105 Wash.2d at 232-33, 713 P.2d 1101. We rejected the State's contention that refusal evidence had probative value for any other purpose. Zwicker, 105 Wash.2d at 235, 713 P.2d 1101. Not being relevant except to draw an inference of guilt or innocence, we held refusal evidence irrelevant and inadmissible in the State's case in chief. Zwicker, 105 Wash.2d at 238, 713 P.2d 1101. Thus, like the Oregon Court of Appeals in Green, Zwicker necessarily holds that refusal evidence is relevant to the State's case in chief specifically and only for its testimonial componentto establish the defendant's state of mind from which an inference of guilt may be drawn.[2]
This case underscores the above discussion. Here, there is no contention the evidence was offered to demonstrate the physical manner in which Stalsbroten delivered the words, "No way." Rather, the evidence was admittedly offered solely for its testimonial valuethe implied assertion of belief that Stalsbroten knew he was drunk. When offered to communicate the defendant's state of mind, refusal evidence "is, in essence, testimony concerning the defendant's belief on the central issue of the case." Green, 68 Or.App. at 522, 684 P.2d 575. Thus, indisputably, the incriminating value of the evidence *1068 here stemmed in whole from its testimonial component.
Accordingly, the majority is simply wrong that a defendant's response to police questioning offered for the sole purpose of exposing the defendant's own consciousness of guilt does not fall within the meaning of "testimonial" as envisioned by the Fifth Amendment. A defendant's response to police questioning is "testimonial" within the meaning of the Fifth Amendment whenever it "reflects the actor's communication of his thoughts to another." Muniz, 496 U.S. at 595 n. 9, 110 S.Ct. 2638. As the foregoing demonstrates, the whole point of offering refusal evidence is to communicate such thoughts.
The majority's contention that refusal evidence may have probative value unrelated to its testimonial component is irrelevant to the discussion at hand. Majority at 1063 ("Just because refusal evidence has probative value does not mean that such evidence is testimonial."). Where refusal evidence is offered for purposes other than for its testimonial component, it is relevant and admissible only for impeachment. Zwicker, 105 Wash.2d at 238, 713 P.2d 1101 (refusal evidence is relevant to the State's case in chief only where it may properly be used to infer guilt; in other circumstances it is relevant and admissible for purposes of impeachment only). Indeed, in the very case the majority cites for its proposition that refusal evidence is relevant and admissible for purposes other than its testimonial aspect, the jury was instructed it could not draw an inference of guilt from the refusal. See Welch v. District Court, 461 F.Supp. 592, 595 n. 1 (D.Vt.1978) (specifically instructing the jury it could draw no "inculpatory inference" from the right of refusal), aff'd, 594 F.2d 903 (2d Cir.1979). Here, the opposite occurred. The trial court found the refusal relevant and admissible precisely because it went to the defendant's consciousness of his guilt, and the prosecutor belabored the point at length. In short, there is simply no room in this case to argue the evidence of refusal was properly admissible for some purpose other than for its testimonial component since the record irrefutably demonstrates it was offered for no other purpose.
Nor is refusal a nontestimonial "act" as the majority posits. Majority at 1068. The United States Supreme Court has refused to adopt such an approach. See South Dakota v. Neville, 459 U.S. 553, 561, 103 S.Ct. 916, 74 L.Ed.2d 748 (1983) (recognizing "the distinction between real or physical evidence, on the one hand, and communications or testimony, on the other, is not readily drawn in "many cases," and "situations arising from a refusal present a difficult gradation from a person who indicates refusal by complete inaction, to one who nods his head negatively, to one who states `I refuse to take the test'...."). In rejecting this approach, the Supreme Court in Neville, 459 U.S. at 561 n. 11, 103 S.Ct. 916, specifically referenced Newhouse v. Misterly, 415 F.2d 514 (9th Cir.1969), the case upon which the majority now relies.[3] Moreover, Misterly itself states that "where an underlying right to refuse such a blood [alcohol] test is present, it would be improper to draw adverse inferences from failure of the accused to respond to a request for a blood test because the accused would thereby be penalized for exercising his rights to refuse the test." Misterly, 415 F.2d at 518 (emphasis added). Accordingly, the Misterly court ruled the refusal admissible only because the defendant did not make any statement when asked to perform the test and because California gave neither a constitutional nor a statutory right of refusal. Misterly, 415 F.2d at 518. Properly analyzed, therefore, Misterly does not support the majority's position but merely begs the question.
In contrast to Misterly, here Stalsbroten had an absolute right to refuse to take the test, City of Seattle v. Personeus, 63 Wash.App. 461, 465, 819 P.2d 821 (1991), and did so by responding verbally, stating, "No way," when the officer requested him to perform the FST. Finally, and perhaps most importantly, refusal to take an FST is always *1069 responsive to a direct question from an officer. Thus, whether indicated by silence, a nod of the head, or a verbal response, refusal is always testimonial in nature because it communicates an assertion to the officer. This is true particularly, as here, where the refusal is admitted specifically to reveal the defendant's belief regarding his own guilt. See Muniz, 496 U.S. at 595 n. 9, 110 S.Ct. 2638 (The Fifth Amendment right against compelled revelation of ones thoughts and beliefs "applies to both verbal and nonverbal conduct; nonverbal conduct contains a testimonial component whenever the conduct reflects the actor's communication of his thoughts to another.").
In addition to finding Stalsbroten's refusal "testimonial," I would hold his response was "compelled" within the meaning of the Fifth Amendment. In Zwicker, 105 Wash.2d at 242, 713 P.2d 1101, we held that attaching evidentiary penalties to the exercise of the statutory right of refusal was not unconstitutionally coercive where the Legislature could withdraw this privilege altogether. We went on to state, "perhaps more importantly," the defendant had not been granted the right of refusal "without a corresponding warning of the consequences of exercising that right." Zwicker, 105 Wash.2d at 242, 713 P.2d 1101. We specifically noted "the Washington implied consent statute requires that the accused be warned that a refusal to submit to the blood alcohol content test may be used against him in a subsequent criminal proceeding." Zwicker, 105 Wash.2d at 242-43, 713 P.2d 1101 (emphasis omitted). Accordingly, we held "there is no coercion in obtaining refusal evidence where the accused is fully informed of the consequences of exercising the statutory right of refusal." Zwicker, 105 Wash.2d at 243, 713 P.2d 1101 (emphasis added). Thus, our holding in Zwicker was premised on two rationales: (1) the test was statutorily authorized under the implied consent law and the right of refusal was merely a grant of legislative grace; and (2) the accused was fully informed of the consequences of exercising the right of refusal.
Neither rationale is present in this case. The Legislature has chosen not to include field sobriety tests within the implied consent laws. There is, thus, no statutory or other legal requirement that a driver take such tests, nor has the right of refusal been statutorily conditioned. The Oregon Court of Appeals correctly recognizes the coercive effect of using refusal evidence under these circumstances:
Because defendant had no obligation to take the test, there could also be no conditions placed on his refusal. Use of the fact that he refused enables the state to obtain communicative evidence to which it would otherwise have no right, as a result of defendant's refusal to provide noncommunicative evidence to which [the state] also had no right. This situation is thus a true Hobson's Choice.
Green, 68 Or.App. at 526, 684 P.2d 575. See also Opinion of the Justices, 412 Mass. at 1211, 591 N.E.2d 1073 (implied consent statute "uses the threat of adverse testimonial evidence as a coercive tool to compel submission to a breathalyzer test. The accused is thus placed in a `Catch-22' situation: take the test and perhaps produce potentially incriminating real evidence; refuse and have adverse testimonial evidence used against him at trial.... Therefore, such refusal evidence is both compelled and furnishes evidence against oneself.").
Essentially, Stalsbroten, like all motorists asked to perform the FST, is placed in a situation where any response to the officer's request (short of taking the test itself), including silence,[4] would be taken as refusal and would produce involuntary testimonial evidence against him. (Again, such evidence would be relevant to the prosecution's case in chief only to reveal the defendant's consciousness of guilt). To place an accused in a situation where he or she must either comply with the State's request or produce *1070 self-incriminatory testimonial evidence is inherently coercive. Any response in these circumstances is not "voluntary" in any meaningful sense of the word.
Thus, I would hold that evidence of refusal to take the field sobriety test is both "testimonial" and "compelled" within the meaning of the Fifth Amendment.
ALEXANDER, SMITH, and SANDERS, JJ., concur.
NOTES
[1] The text of the self-incrimination clause in the Washington Constitution differs from the text of the Fifth Amendment. It provides that "[n]o person shall be compelled in any criminal case to give evidence against himself." WASH. CONST. ART. I, § 9. However, this court has held that the "Washington constitutional provision against self-incrimination envisions the same guarantee as that provided in the federal constitution." State v. Moore, 79 Wash.2d 51, 57, 483 P.2d 630 (1971). See also State v. Zwicker, 105 Wash.2d 228, 242, 713 P.2d 1101 (1986).
[2] We note, however, that the question of the admissibility and relevance of such evidence is not before us at this time. Our holding in this case is limited to the question of whether there is any constitutional problem with admitting evidence of a defendant's refusal to perform FSTs. We conclude that there is no constitutional problem with admitting such evidence. This is not to say, however, that a trial court may not exclude evidence of a drunk driving suspect's refusal to take an FST in a particular case if the probative value of the evidence is substantially outweighed by the danger of unfair prejudice or jury confusion. See State v. Long, 113 Wash.2d 266, 272, 778 P.2d 1027 (1989). We leave the question of whether such evidence is relevant and admissible under the Rules of Evidence for another day.
[1] Although the wording of article I, section 9 of our state constitution is substantially different than the Fifth Amendment, Stalsbroten has not argued it provides greater protection. Therefore, the issue in this case is limited to the scope of the right as afforded under the Fifth Amendment.
[2] Subsequently, in State v. Long, 113 Wash.2d 266, 272, 778 P.2d 1027 (1989), we held refusal evidence relevant and admissible specifically because it could now be used to infer guilt or innocence under the amended implied consent law. Thus, Long merely reiterates that refusal evidence is relevant because of its testimonial component.
[3] The New Mexico case cited by the majority also relied on Misterly. See State v. Wright, 116 N.M. 832, 835, 867 P.2d 1214 (Ct.App.1993) (quoting McKay v. Davis, 99 N.M. 29, 31, 653 P.2d 860 (1982) (quoting Misterly, 415 F.2d at 518)).
[4] It is unclear how the majority would treat silence in the face of an officer's request to perform an FST since silence itself could simply be taken as a "nontestimonial" act of refusal. Commenting on a defendant's silence, however, would clearly implicate the constitutional right against self-incrimination. See Easter, 130 Wash.2d at 241, 922 P.2d 1285 (officer's testimony defining "`smart drunk' as meaning evasive behavior and silence" in response to police questioning violated defendant's right against self-incrimination).